Carmen **IRIZARRY** et al., Plaintiffs,

v.

Caspar **WEINBERGER** et al., Defendants.

Leona **SAWYER** et al., Plaintiffs,

v.

Earl L. **BUTZ** et al., Defendants.

Nos. 74 Civ. 1046, 74 Civ. 1054.

United States District Court, S. D. New York.

May 10, 1974.

Food Research & Action Center, Inc., by Ronald F. Pollack and Roger A. Schwartz, New York City, Legal Aid Society, Westchester County, by Norman B. Lichtenstein, White Plains, N. Y., and Catherine Cronin, New Rochelle, N. Y., for plaintiffs.

Paul J. Curran, U. S. Atty., by William S. Brandt, Asst. U. S. Atty., New York City, for defendants.

Before HAYS, Circuit Judge, and MOTLEY and GURFEIN, District Judges.

MOTLEY, District Judge.

## OPINION ON MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

### INTRODUCTION

Involved in this case is whether Congress, consistent with the Fifth and Fourteenth Amendments to the United States Constitution, can confer the equivalent of a food stamp benefit on one group of needy while denying that benefit on an allegedly similarly situated group. Plaintiffs, some of New York's needy aged, blind and disabled, challenge the constitutionality of Public Law 93–233, § 8. (See Appendix A.) The law amended Section 3(e) of the Federal Food Stamp Act. 7 U.S.C. § 2011 et

seq. By redefining "household" for purposes of food stamp eligibility, it established a method of distributing money and/or food stamps to recipients of Supplemental Security Income (hereinafter SSI). Plaintiffs contend that their class has been denied food stamps or equivalent value in violation of their rights to equal protection and due process by the challenged amendment. Two actions were commenced both challenging the statute on the same grounds. Pursuant to stipulation the actions were consolidated. On March 15, 1974, a temporary restraining order was issued prohibiting the denial of food stamp benefits to the twelve named plaintiffs.

A second temporary restraining order was signed on April 2, 1974 in cooperation with the United States Attorney and the Department of Health, Education and Welfare extending food stamp relief just for the month of April to those individuals who had requested and were denied food stamps because they were receiving a mandatory supplementation in the SSI program upon attestation by plaintiffs' counsel to the United States Attorney's office. (Gurfein, J.)

Thereafter, plaintiffs moved to convene a three-judge district court pursuant to 28 U.S.C. § 2282 and to preliminarily enjoin the operation of the challenged amendment. After argument on March 27, 1974, plaintiffs' motion to convene a three-judge court was granted over the Government's objection.

Because of the complex factual and statutory context in which the case arises, it was not immediately clear that prior decisions by the Supreme Court inescapably rendered the plaintiffs' constitutional claims unpersuasive. Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973). Hence, the three-judge court was convened.

The Government has since moved to dismiss the complaints. The three-judge court heard oral argument on April 8, 1974.

Plaintiffs currently receive cash benefits under the new federal income maintenance program for the elderly, blind and disabled which are greater per recipient (in absolute amount) than the cash benefits received by the class in favor of which the scheme allegedly discriminates.[1] Plaintiffs claim, however, that while they may receive greater amounts in absolute terms, they receive a smaller amount in reference to their real needs and that the statutory scheme is, therefore, unconstitutional. A similar argument was made in Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970) (large families received greater absolute amounts than small families but less in comparison to their needs) and was, of course, rejected by the Court. The Court held that, given a finite social welfare fund, it was possible for a government to rationally set a maximum amount above which it will not pay, even though this may result in some disparity of treatment. The instant case is controlled by *Dandridge*, which applied to the facts herein forecloses plaintiffs' challenge. Accordingly, for the reasons which follow, plaintiffs' motion for a preliminary injunction is denied, and defendants' motion to dismiss the complaints is granted.

## I. JURISDICTION

Defendants question the jurisdiction of this federal district court to entertain the instant complaint. Plaintiffs assert a panoply of jurisdictional bases,[2] including 28 U.S.C. § 1337 which provides in relevant part that the appropriate federal district court has "original juris-

---

1. Plaintiffs' grants include their actual cost of rent and fuel heating costs, originally made pursuant to 18 N.Y.C.R.R. §§ 352.3 and 352.5, and now made pursuant to Public Law 93–66, whereas new SSI recipients receive a monthly grant made without reference to these actual living expenses.

2. Other jurisdictional bases asserted by plaintiffs include: 28 U.S.C. § 1331; 28 U. S.C. § 1343; 28 U.S.C. § 1361; and 5 U.S. C. § 702.

diction of any civil action or proceeding arising under any Act of Congress regulating commerce. . . ." Insofar as the court finds jurisdiction under 28 U.S.C. § 1337 it is unnecessary to pass on the availability of other alleged jurisdictional bases.

▮ The statute challenged here, Public Law 93–233, § 8 by its terms, is an amendment to the Food Stamp Act. The Food Stamp Act was authorized because the Commerce Clause was a "significant source of Federal power" supporting its enactment. The instant case "arises under" an amendment to that act and is therefore properly before this court as a case arising under an act regulating commerce. Moreno v. United States Department of Agriculture, 345 F.Supp. 310, 312–313 (D.D.C.1972), aff'd 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).

## II. THE RELEVANT STATUTES

To fully understand the operation and impact of the challenged amendment, Public Law 93–233, § 8(a)(1), several interrelated statutes must be examined. The relevant statutes are Public Law 92–603, § 301 (Appendix B), which amends Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. (Supp. II 1972); Public Law 93–66, § 212 (Appendix C); Public Law 93–86, § 3(b) (Appendix D).

These statutes affect both the Food Stamp Act, 7 U.S.C. § 2011 et seq., and Title XVI and other provisions of the Social Security Act, 42 U.S.C. § 301 et seq. The statutes are discussed below in the order of their enactment.

### A. *Title XVI*

Prior to the passage of Public Law 92–603, which as of January 1, 1974 controls welfare treatment of the aged, blind and disabled, New York State operated under Title XVI of the Social Security Act. Under that program aid to the aged, blind and disabled (AABD)

was administered by New York. New York determined the level of assistance based on an individual assessment of needs.[3] The state and federal governments each contributed 50% toward the assistance payments actually made.

### B. *Public Law 92–603*

Public Law 92–603, § 301 amended Title XVI. In relevant part, 92–603 provided that the federal government would guarantee an income of $140 per month to those individuals falling under its provisions, *i. e.*, those who were aged, blind or disabled. Public Law 92–603 represented a philosophical departure from a welfare system based on need to one based on income maintenance.

Under the new statute, New York could optionally supplement this $140 by any amount it desired. Public Law 92–603, § 301, amending § 1616 of the Social Security Act. So long as New York provided optional supplements to the aged, blind and disabled and if New York elected to allow the Secretary of Health, Education and Welfare (hereinafter "the Secretary") to administer the program, the Secretary would absorb the administrative costs.

Moreover, insofar as New York had previously provided these optional supplements, the Secretary would guarantee New York that it would not have to spend more total dollars annually in the form of the new optional supplements than it had previously spent on grants under the old Title XVI during the calendar year 1972. Public Law 92–603, § 401(a)(1). This guaranteed level is called the "hold harmless" level. The hold harmless level was incorporated to protect states against the cost of financing increased case loads. Thus, if the annual aggregate amount of optional payments exceeds the state's total outlay with respect to the aged, blind and disabled for calendar 1972, that amount in excess will be paid by the federal government.

---

3. N.Y. Social Welfare Law § 320 et seq. (McKinney's Consol.Laws, c. 55, 1966).

The "adjusted payment level", however, is the one statutory proviso which prevents the state from generously giving high optional benefits while the federal government picks up the bill. Public Law 92–603, § 401(a)(2). The adjusted payment level disallows credits toward hold harmless if the state makes excessive optional supplementations. That is, Public Law 92–603 provided that a state cannot have a credit toward "hold harmless" for any portion of the optional supplementation which exceeded the adjusted payment level. The adjusted payment level is primarily comprised of the theoretical money payment a totally indigent individual would have received under New York's old Title XVI plan in effect for January 1972. The second component of the adjusted payment level is the bonus value of food stamps (that is that amount by which the face value of food stamps exceeds the actual cash required to buy coupons) more fully discussed below.[4]

Putting these two concepts of hold harmless and adjusted payment level together, the following propositions emerge. First, in terms of aggregate payments by the state, once the hold harmless level is achieved, all additional payments made on the basis of the adjusted payment level are reimbursed from federal funds. Second, a high adjusted payment level is clearly preferable from the state's point of view because it allows a state to pay high benefits to its SSI recipients while simultaneously having those benefits count toward hold harmless. New York was not unmindful of the fact that it could both pay high benefits and hasten the day when its welfare "burden" would be shifted to the federal government.

Two further comments about Public Law 92–603 are necessary. First, the adjusted payment level is an average. This averaging was necessitated by the fact that in January 1972, an individual with no income entering a New York welfare office would receive a grant under old Title XVI which was a function of individualized need. The grant was composed of two parts, the first of which was the sum of personal needs called the "pre-added allowance."[5] The second component was the recipient's actual rent and fuel costs.[6] The total of these two figures was the grant under old Title XVI. Therefore, in order to compute the adjusted payment level for purposes of Public Law 92–603, § 401(b)(1), it was necessary to statistically average the various grants received during January 1972. Plaintiffs do not challenge, nor does any constitutional infirmity arise from averaging under these circumstances. See Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L. Ed.2d 442 (1970).

■ Finally, Public Law 92–603, § 411(a) amended the Food Stamp Act and provided that any individual receiving SSI benefits was ineligible for food stamps. No constitutional infirmity arises from the total elimination of the food program to SSI recipients. See, e. g., Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

### C. Public Law 93–66, § 212

The passage of 92–603 threatened plaintiffs' standard of living, since the proposed grant under 92–603 was lower than that which plaintiffs had previously enjoyed. Due to New York's historical rent situation, plaintiffs were receiving old Title XVI benefits well in excess of the adjusted payment level. Under the new SSI program plaintiffs would have suffered, insofar as New York was not required to continue its former level of payments. Indeed, under the hold harmless provisions of Public Law 92–603 it was in New York's interest to pay optional supplements at a level equal to, but not greater than, the adjusted payment level. Thus, plaintiffs would likely

---

4. See p. 1152 infra.

5. 18 N.Y.C.R.R. §§ 352.2 and 352.7(f)(2).

6. See fn 1 supra.

have received less benefits under the new law than under the old Title XVI in addition to losing food stamps.

Recognizing this problem, Congress enacted Public Law 93–66, § 212. Under 93–66, § 212 the states are required to "mandatorily supplement" all December 1973 recipients, thus providing recipients with the same *cash* benefits in January 1974 as they received in December 1973. Failure on the part of a state to comply with this mandate was indeed costly. The state would lose all federal assistance for its medicaid program. Public Law 93–66, § 212(a)(1). The mandatory supplement is equal to the amount by which an individual's December 1973 benefits exceed his or her federal payment under the new SSI program. Because of the mandatory payment required under this statute, this "grandfathered" group of recipients, plaintiffs here, is sometimes referred to as "mandatories" while new SSI recipients, because they receive payment which the state chooses to give at its option, are called "optionals". Importantly, the cost of mandatory supplementation is borne by the state. It should be emphasized that the mandatory supplement applies *only* to individuals who were actually receiving cash benefits on December 31, 1973, and is *inapplicable* to individuals who are economically indistinguishable from the plaintiffs but who first happened to apply for benefits after January 1, 1974. Taking Public Laws 92–603 and 93–66, § 212 together the scheme represents a legislative decision to even out benefits paid to all aged, blind and disabled regardless of rent, together with a decision to ameliorate the effect of such an evening out on those individuals who have already come to rely on higher payments.

With respect to plaintiffs, Congress has enacted legislation which has the following results: first, plaintiffs are guaranteed the same cash benefits as they had previously received; second, plaintiffs are by definition receiving cash benefits in excess of any other SSI recipients in New York; third, plaintiffs are receiving higher benefits under Public Law 93–66 than they would have received under the optional supplementation of 92–603.

### D. Public Law *93–86,* § *3*(b)

Congress next came to deal with the issue of the food stamp treatment of SSI recipients. As noted above,[7] all SSI recipients had been rendered food stamp ineligible by virtue of Public Law 92–603, § 411(a). The solution relating to food stamps reached by the legislators was enacted into Public Law 93–86, § 3(b) which amends section 3(e) of the Food Stamp Act. 7 U.S.C. § 2011 et seq. This amendment provides that an SSI recipient will again become food stamp eligible if the sum of all the recipient's current benefits is less than the sum of the welfare payment plus the bonus value of the food stamps that that recipient would have received were the state's December 1973 welfare program still in effect. Broadly stated, this section recognizes that SSI recipients, both optionals and mandatories, might be less well off under the new federally administered program, and if after calculating the comparison this should be the case, food stamp eligibility will be restored to any SSI recipient who has suffered due to federalization.

As is readily apparent from the face of the statute (see Appendix D), this amendment will be difficult to administer. It involves elaborate calculations as to each recipient before a determination as to whether an individual recipient has suffered can be reached. For this reason, the effective date of the amendment was postponed until July 1, 1974. To fill in the gap between January 1 and June 30, 1974 during which time no federal legislation regarding the food stamp treatment of SSI recipients was scheduled to be effective, Congress enacted an interim measure. That interim statute, embodied in Public Law 93–233, § 8

---

7. See p. 1150 *supra*.

amends section 3(e) of the Food Stamp Act for the six months commencing January 1, 1974. It is this interim amendment which plaintiffs challenge.

### E. *Public Law 93–233, § 8*

Under the challenged amendment all SSI recipients are rendered ineligible for food stamps if the state elects to raise the adjusted payment level to include the bonus value of food stamps. As noted above,[8] an adjusted payment level which includes the bonus value of food stamps is the so-called maximum adjusted payment level. Section 8(c) specifically provides that a state is required to pay an amount equal to the maximum adjusted payment level before the food stamp ineligibility result obtains.

By way of review, Public Law 92–603's adjusted payment level is comprised of two basic components.[9] The main component is the money payment a totally indigent individual would have received in January 1972. A second component is the bonus value of food stamps. Public Law 93–233, § 8 only applies to those five states, one of which is New York, which, prior to October 1973 had indicated to the Secretary an intention to specifically raise the adjusted payment level to include the bonus value of food stamps.[10]

8. See p. 1149 *supra.*

9. The adjusted payment level is more fully discussed at p. 1150 *supra.* A third component, not relevant here, is also included in the calculation.

10. The Secretary made a finding that the level of payments in New York and four other states had been specifically increased so as to include the bonus value of food stamps.

(c) *Food stamp eligibility of SSI recipients—(1) Ineligible SSI recipients.*
(i) No SSI recipient shall be considered a household member or an elderly person for food stamp program purposes if he resides in the States of California, Massachusetts, Nevada (only applies to aged and blind), New York and Wisconsin. The Secretary of Health, Education, and Welfare has determined, pursuant to the provisions of Public Law 93–233, that such States provide State supplementary payments which have been specifically increased to include the value of bonus food coupons. The letter constituting this determination is published herewith.
(ii) SSI recipients in such States shall be terminated from participation in the program immediately, inasmuch as the statutory provisions requiring this result became effective January 1, 1974.
(iii) In such States the income and resources of an SSI recipient who resides with eligible household members or elderly persons shall not be considered available to the household members or elderly persons (except as provided in paragraph (c)(3)(ii) of this section), nor shall his presence be considered in determining the household coupon allotment and purchase requirement. In such instances any payment for a deductible expense made on behalf of the household by the ineligible SSI recipient shall not be counted as income to the household nor shall the household be allowed a deduction for such expense. If deductible household expenses are shared among household members and an ineligible SSI recipient, the household shall be granted a deduction based on that proportion of the expense which is actually borne by the household.

The letter referred to reads as follows:

January 25, 1974

Dear Mr. Secretary: On January 16, 1973, I determined that the States of California, Hawaii, Massachusetts, New York, and Wisconsin provide supplementary payments which meet the criteria set forth in Sections 8(b) and 8(c) of Public Law 93–233. On that date I also determined that the State of Nevada provides such payments but only to the aged and blind.

I have informed each of the aforementioned States of my decision and given each State the opportunity to exercise the option afforded them by Section 8(c)(2) of Public Law 93–233. The States of California, Massachusetts, Nevada, New York, and Wisconsin have elected to exercise this option for the period January 1, 1974 through June 30, 1974 and they will retain the bonus value of food stamps in their adjusted payment levels. The State of Hawaii has decided not to retain the bonus value of food stamps in its adjusted payment level.

Therefore, it is my understanding that as a result of these actions taken by the States themselves, recipients of State supplementary payments residing in California, Massachusetts, Nevada, New York, and Wisconsin will not be eligible to participate in certain food assistance programs of the Department of Agriculture.

Sincerely,
Caspar W. Weinberger
Secretary, Health,
Education and Welfare

The bonus value is determined by first examining what the cash value of food stamps would have been in January 1972 for an individual with an income equal to the adjusted payment level. Next one looks to the amount of actual cash it would have taken to buy the amount of food stamps to which a recipient was entitled. Since a given amount of cash purchases a higher face amount of food stamps, the difference between these two amounts is the "bonus value". If the state adds the bonus value to the adjusted payment level the state is said to have "cashed out" its food stamps. That is, an individual receives cash in lieu of food stamps.

If a state elects to give grants short of the maximum adjusted payment level (bonus value of food stamps included), then such state may not, for purposes of calculating its credits toward hold harmless, include the bonus value of food stamps as part of its adjusted payment level. Public Law 93–233, § 8(d), (e). Clearly then, it is advantageous for a state to grant the maximum adjusted payment level so as to have the entire amount above the federal minimum apply toward the state's hold harmless level. Optionals are, of course, benefitted because they are assured of receiving a payment equal to the maximum adjusted payment level.

Notice that if a state had not been authorized to include the bonus value of food stamps as part of the adjusted payment level, then it would have incurred greater expenses than anticipated. That is, the cash out per recipient would have been borne by the state rather than the federal government. Fiscal considerations being what they are, it would be unlikely that a state would raise its adjusted payment level, absent a hold harmless credit.

The undisputed result of New York's having accepted the financial invitation

of Public Law 93–233, § 8 was to increase the level of benefits to optionals by the bonus value of food stamps while simultaneously rendering all SSI recipients food stamp ineligible. Since mandatories have been vested in their December 1973 level, by virtue of 93–66—a level higher than the maximum adjusted payment level—the cash out was of no benefit to them. Indeed, the only impact on plaintiffs of cashing out was negative: cashing out rendered plaintiffs food stamp ineligible. From the point of view of New York State, with respect to mandatories, the cash out provision allowed the state to credit each $10 previously paid by the state under Public Law 93–66, § 212 toward its hold harmless level. This result is clearly intended by the express terms of the challenged statute. The question now before us is whether a statute can, consistent with the Fifth and Fourteenth Amendments, confer a benefit on one needy group while denying that benefit to an allegedly similarly situated group. More precisely, the issue is whether Congress could have rationally and hence constitutionally provided for a food stamp cash out for optionals while forbidding a food stamp cash out for mandatories.

### III. *The Applicable Law*

Plaintiffs' constitutional claims are that the challenged amendment to the Food Stamp Act violates their rights to equal protection and due process. This court holds that the equal protection claim is foredoomed by prior Supreme Court decisions and the due process claim is untenable.

The essence of plaintiffs' equal protection claim is that the challenged amendment unconstitutionally creates two different classes of individuals for "food assistance" purposes. The first class includes needy New York recipients of SSI who are, but for the challenged amend-

---

39 Fed.Reg. 3812 (Jan. 30, 1974). (See also, 7 C.F.R. § 271.10.)

In a recent case in the Eastern District of California, plaintiffs unsuccessfully attacked the manner in which the Secretary made this finding and the finding itself. California Legislative Council for Older Americans v. Weinberger, 375 F.Supp. 216 (E.D.Cal., decided April 5, 1974, Civil No. S74–32).

ment, financially eligible for food stamp benefits and who receive mandatory SSI payments. The second class, according to plaintiffs, includes all other needy New York residents who are financially eligible for food stamp benefits, i. e., optional SSI recipients and non-SSI needy. The second class receives either a food stamp "cash out" or food stamps. The first class, equally in need of food assistance, receives neither benefit. Such a discriminatory denial of food aid is arbitrary and capricious, say plaintiffs, and is not reasonably related to the declared purpose of the Food Stamp Act. The Act's purpose is to alleviate hunger and malnutrition among low income households by permitting such households the opportunity "to purchase a nutritionally adequate diet through normal channels of trade." (7 U.S.C. § 2011). Consequently, plaintiffs say, the amendment violates their equal protection guarantees under the Fifth and Fourteenth Amendments to the United States Constitution.

Defendants have moved to dismiss the complaint on the ground that plaintiffs' due process claim is without merit and the equal protection claim is barred by the Supreme Court's decision in Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970).

The court agrees with defendants that the challenged amendment, which involves congressional authorization for a state determination to grant additional benefits to persons who receive less SSI benefits than do plaintiffs, entails no constitutional violation of equal protection.

If this were simply a case involving the Food Stamp Act, alone, in that persons with identical incomes and food needs were divided into two classes, one receiving food stamps and one not receiving food stamps simply because the latter received a higher rent supplement based on historic considerations, plaintiffs would have a more convincing equal protection claim. But this is not such a simple case. Congress, by enact-

ing the challenged amendment, has made food stamp eligibility an integral part of its new income maintenance program for the elderly, blind and disabled, thus bringing the instant classification and welfare distribution plan squarely within the teaching of *Dandridge, supra.*

The court said in *Dandridge* at p. 485, 90 S.Ct. at p. 1161:

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S. Ct. 337, 340, 55 L.Ed. 369. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 336 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393.

It is undisputed that, while plaintiffs receive neither food stamps nor a food stamp "cash out", they do receive, as a result of congressional mandate, considerably greater SSI assistance than the optionally supplemented class receives, food stamp "cash out" included. All other needy persons who are eligible for food stamps receive no SSI benefits.

Congress first provided that all SSI recipients would be, by virtue of this income assistance, food stamp ineligible. It would be entirely rational for Congress then to decide that it furthers its purpose of income maintenance for the elderly, blind, and disabled to permit the states to grant an additional SSI benefit to the less well situated optionally sup-

plemented class in the form of a food stamp "cash out" without giving any additional benefit to plaintiffs' mandatorily supplemented class. The constitutional propriety of such a welfare distribution plan is thus framed by Dandridge v. Williams, *supra*. *See also* Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972). What Congress has authorized and what New York had done is "rationally based and free from invidious discrimination," Hagans v. Lavine, 415 U.S. 528, 539, 94 S.Ct. 1372, 1380, 39 L.Ed.2d 577 (1974), in that it permits the less well situated class to receive a slightly higher optional supplement to meet its needs and permits New York to place a limit on the amount it will spend on the mandatorily supplemented class.

■ Even if it were conceded that giving the cash value for food stamps to one person is no justification for denying it to another, it remains a sober reality that since Congress could have lowered the mandatory payments required of the states under section 212 of Public Law 93–66 directly without challenge (since there is no vested right in welfare payments—Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971)), it can do so by indirection as well. It is not Congress which is lowering the benefits to the mandatorily supplemented. Congress is merely giving the state the right to do so with respect to its own voluntary optional supplement payments, and that is permissible under Dandridge v. Williams, *supra*.

Plaintiffs' due process claim is seriously strained and thus untenable. Plaintiffs contend that in enacting the challenged amendment Congress erroneously assumed that all SSI recipients would receive food stamps or a food stamp "cash out". Plaintiffs then proceed to characterize this alleged error as one which created, by statute, a conclusive, irrebuttable presumption against which plaintiffs can present no evidence.

This results in harm to plaintiffs, they claim, in violation of their due process rights.

■ The challenged amendment, however, contains no irrebuttable presumption. It simply empowers the Secretary of HEW to find that New York has "cashed out" the food stamp benefit by raising the existing cash benefit to the optionally supplemented class to a stated maximum. Upon such a finding by the Secretary of HEW,[11] the amendment provides that all New York SSI recipients are rendered food stamp ineligible. The amendment simply does not provide for an equivalent "cash out" to the mandatorily supplemented. And it does not appear that Congress intended a different result. This may be legislative sleight of hand but it is not constitutionally vulnerable in this instance.

When the first amendment to the Food Stamp Act becomes effective in July 1974, all SSI recipients will apparently be eligible for food stamp benefits if the total welfare and food stamp benefit a recipient would have been entitled to receive on the specified 1973 date exceeds his or her current SSI grant. By this prospective remedial measure the present hardship of these plaintiffs may be ameliorated. In the interim, if plaintiffs' food needs are to be adequately met, the New York legislature must find the heart and the way to do so. Our sympathy for the plaintiffs simply has no legal weight.

The motion to dismiss is accordingly granted and this three-judge court is dissolved.

## APPENDIX

### A

PUBLIC LAW 93–233 § 8

ELIGIBILITY OF SUPPLEMENTAL SECURITY INCOME RECIPIENTS FOR FOOD STAMPS.

Sec. 8. (a)(1) Section 3(e) of the Food Stamp Act of 1964 is amended

11. See fn. 10 *supra*.

effective only for the 6-month period beginning January 1, 1974 to read as it did before amendment by Public Law 92–603 and Public Law 93–86, but with the addition of the following new sentence at the end thereof: "For the 6-month period beginning January 1, 1974 no individual who receives supplemental security income benefits under title XVI of the Social Security Act, State supplementary payments described in section 1616 of such Act, or payments of the type referred to in section 212(a) or Public Law 93–66, shall be considered to be a member of a household or an elderly person for purposes of this Act for any month during such period, if, for such month, such individual resides in a State which provides State supplementary payments (A) of the type described in section 1616(a) of the Social Security Act, and (B) the level of which has been found by the Secretary of Health, Education, and Welfare to have been specifically increased so as to include the bonus value of food stamps."

(2) Section 3(b) of Public Law 93–86 shall not be effective for the 6-month period beginning January 1, 1974.

(b)(1) Section 4(c) of Public Law 93–86 shall not be effective for the 6-month period beginning January 1, 1974.

(2) The last sentence of section 416 of the Act of October 31, 1949 (as added by section 411(g) of Public Law 92–603) shall not be effective for the 6-month period beginning January 1, 1974.

(3) For the 6-month period beginning January 1, 1974, no individual, who receives supplemental security income benefits under title XVI of the Social Security Act, State supplementary payments described in section 1616 of such Act, or payments of the type referred to in section 212(a) of Public Law 93–66, shall be considered to be a member of a household for any purpose of the food distribution program for families under section 32 of Public Law 320 section 416 of the Agricultural Act of 1949, or any other law, for any month during such period, if, for such month, such individual resides in a State which provides State supplementary payments (A) of the type described in section 1616(a) of the Social Security Act, and (b) the level of which has been found by the Secretary of Health, Education, and Welfare to have been specifically increased so as to include the bonus value of food stamps.

(c) For purposes of the last sentence of section 3(e) of the Food Stamp Act of 1964 (as amended by subsection (a) of this section) and subsections (b)(3) and (f) of this section, the level of State supplementary payment under section 1616(a) shall be found by the Secretary to have been specifically increased so as to include the bonus value of food stamps (1) only if, prior to October 1, 1973, the State has entered into an agreement with the Secretary or taken other positive steps which demonstrate its intention to provide supplementary payments under section 1616(a) at a level which is at least equal to the maximum level which can be determined under section 401(b)(1) of the Social Security Amendments of 1972 and which is such that the limitation on State fiscal liability under section 401 does result in a reduction in the amount which would otherwise be payable to the Secretary by the State, and (2) only with respect to such months as the State may, at its option, elect.

(4) Section 401(b)(1) of the Social Security Amendments of 1972 is amended by striking out everything after the word "exceed" and inserting in lieu thereof: "a payment level modification (as defined in paragraph (2) of this subsection with respect to such plans."

(e) The amendment made by subsection (d) shall be effective only

for the 6-month period beginning January 1, 1974, except that such amendment shall not during such period be effective in any State which provides supplementary payments of the type described in section 1616(a) of the Social Security Act, the level of which has been found by the Secretary to have been specifically increased so as to include the bonus value of food stamps.

## APPENDIX

## B

PUBLIC LAW 92–603 § 301

SUPPLEMENTAL SECURITY INCOME FOR THE AGED, BLIND, AND DISABLED.

*Statement of Purpose; authorization of appropriations.*

For the purpose of establishing a national program to provide supplemental security income to individuals who have attained age 65 or are blind or disabled, there are authorized to be appropriated sums sufficient to carry out this subchapter.

*Basic entitlement to benifits.*

Every aged, blind, or disabled individual who is determined under part A to be eligible on the basis of his income and resources shall, in accordance with and subject to the provisions of this subchapter, be paid benefits by the Secretary of Health, Education, and Welfare.

## APPENDIX

## C

PUBLIC LAW 93–66 § 212(a)

MANDATORY MINIMUM STATE SUPPLEMENTATION OF SSI BENEFITS PROGRAM

Sec. 212. (a)(1) In order for any State (other than the Commonwealth of Puerto Rico, Guam, or the Virgin Islands) to be eligible for payments pursuant to title XIX (Medicaid), with respect to expenditures for any quarter beginning after December 1973, such State must have in effect an agreement with the Secretary of Health, Education, and Welfare (hereinafter in this section referred to as the "Secretary") whereby the State will provide to individuals residing in the State supplementary payments as required under paragraph (2).

(2) Any agreement entered into by a State pursuant to paragraph (1) shall provide that each individual who—

(A) is an aged, blind, or disabled, individual within the meaning of section 1614(a) of the Social Security Act (as enacted by section 301 of the Social Security Amendments of 1972), and

(B) for the month of December 1973 was a recipient of (and was eligible to receive) aid or assistance (in the form of money payments) under a State plan of such State (approved under title I, X, XIV, or XVI, of the Social Security Act)

shall be entitled to receive, from the State, the supplementary payment described in paragraph (3) for each month, beginning with January 1974, and ending with whichever of the following first occurs:

(C) the month in which such individual dies, or

(D) the first month in which such individual ceases to meet the condition specified in subparagraph (A);

except that no individual shall be entitled to receive such supplementary payment for any month, if, for such month, such individual was ineligible to receive supplemental income benefits under title XVI of the Social Security Act by reason of the provisions of section 1611(e)(1)(A), (2), or (3), 1611(f), or 1615(c) of such Act.

(3)(A) The supplementary payment referred to in paragraph (2) which shall be paid for any month to any individual who is entitled thereto under an agreement entered into pursuant to this subsection shall (except as provided in subparagraph (D) be an amount equal to (i) the amount by

which such individual's "December 1973 income" (as determined under subparagraph (B)) exceeds the amount of such individual's "title XVI benefit plus other income" (as determined under subparagraph (C) for such month, or (ii) if greater, such amount as the State may specify.

(B) For purposes of subparagraph (A), an individual's "December 1973 income" means an amount equal to the aggregate of—

(i) the amount of the aid or assistance (in the form of money payments) which such individual would have received (including any part of such amount which is attributable to meeting the needs of any other person whose presence in such individual's home is essential to such individual's well-being) for the month of December 1973 under a plan (approved under title I, X, XIV, or XVI, of the Social Security Act) of the State entering into an agreement under this subsection, if the terms and conditions of such plan (relating to eligibility for and amount of such aid or assistance payable thereunder) were, for the month of December 1973, the same as those in effect, under such plan, for the month of June 1973, and

(ii) the amount of the income of such individual (other than the aid or assistance described in clause (i)) received by such individual in December 1973, minus any such income which did not result, but which if properly reported would have resulted in a reduction in the amount of such aid or assistance.

(C) For purposes of subparagraph (A), the amount of an individual's "title XVI benefit plus other income" for any month means an amount equal to the aggregate of—

(i) the amount (if any) of the supplemental security income benefit to which such individual is entitled for such month under title XVI of the Social Security Act, and

(ii) the amount of any income of such individual for such month (other than income in the form of a benefit described in clause (i)).

(D) If the amount determined under subparagraph (B)(i) includes, in the case of any individual, an amount which was payable to such individual solely because of—

(i) a special need of such individual (including any special allowance for housing, or the rental value of housing furnished in kind to such individual in lieu of a rental allowance) which existed in December 1973, or

(ii) any special circumstance (such as the recognition of the needs of a person whose presence in such individual's home, in December 1973, was essential to such individual's well-being),

and, if for any month after December 1973 there is a change with respect to such special need or circumstance which, if such change had existed in December 1973, the amount described in subparagraph (B)(i) with respect to such individual would have been reduced on account of such change, then, for such month and for each month thereafter the amount of the supplementary payment payable under the agreement entered into under this subsection to such individual shall (unless the State, at its option, otherwise specifies) be reduced by an amount equal to the amount by which the amount (described in subparagraph (B)(i)) would have been so reduced.

# APPENDIX

## D

PUBLIC LAW 93–86 § 3(b)

FOOD STAMPS

Sec. 3. The Food Stamp Act of 1964, as amended, is amended as follows:

(b) Section 3(e) of the Food Stamp Act of 1964 is amended by striking out the last sentence therein and in-

serting in lieu thereof the following sentence: "No individual who receives supplemental security income benefits under title XVI of the Social Security Act shall be considered to be a member of a household or an elderly person for any purpose of this Act for any month if such person receives for such month, as part of his supplemental security income benefits or payments, described in section 1616(a) of the Social Security Act (if any), an amount equal to the bonus value of food stamps (according to the Food Stamp Schedule effective for July 1973) in addition to the amount of assistance such individual would be entitled to receive for such month under the provisions of the plan of the State approved under title I, X, XIV, or XVI, as appropriate, in effect for December 1973, assuming such plan were in effect for such month and such individual were aged, blind, or disabled, as the case may be, under the provisions of such State plan or under Public Law 92–603 as amended. The Secretary of Health, Education, and Welfare shall issue regulations for the implementation of the foregoing sentence after consultation with the Secretary of Agriculture."