**STATE of Louisiana, Through the DEPARTMENT OF HEALTH AND HUMAN RESOURCES**

**v.**

**Robert BERGLAND, Secretary, United States Department of Agriculture.**

**Civ. A. No. 79–388–A.**

United States District Court, M. D. Louisiana, Civil Division.

Jan. 29, 1982.

Thomas H. Matuschka, Atty. for Dept. of Health and Human Resources, Baton Rouge, La., for plaintiff.

Shelly C. Zwick, Asst. U. S. Atty., Baton Rouge, La., for defendant.

JOHN V. PARKER, Chief Judge.

This action arises as the aftermath of a burglary of and theft from a food stamp issuing office in New Orleans. The court must decide where the cost of the stolen stamps falls, upon the State of Louisiana, which had custody of them, or upon the national government, which issued them in the first place. In doing so, the court must pass upon the authority of the Secretary of Agriculture to promulgate a regulation which fixes strict liability upon the states for such losses, must consider the reasonableness of a presumption of redemption included in the regulation and, if the loss falls upon the state, must decide whether the Secretary can use an offset procedure against the State's "letter of credit."

█ The State of Louisiana has brought an action for declaratory judgment and for injunctive relief under 28 U.S.C. § 2201 against the Secretary. The only claimed basis for jurisdiction is that statute. It is well settled that the Declaratory Judgments Act is not an independent basis for jurisdiction; it makes no change in the jurisdiction granted by the Congress to federal district courts. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). The provisions of 28 U.S.C. § 1337, however, grant district courts, "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce...." The Food Stamp Act of 1964 (Public Law 88–525, 7 U.S.C. §§ 2011–2025) has been held to be an act of Congress regulating commerce. *Moreno v. United States Department of Agriculture*, 345 F.Supp. 310 (D.C.D.C.1972) aff'd 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). See also *Irizarry v. Weinberger*, 381 F.Supp. 1146 (D.C.N.Y.1974); *California Legislative Council for Older Americans v. Weinberger*, 375 F.Supp. 216 (D.C.Cal.1974); *Giguere v. Affleck*, 370 F.Supp. 154 (D.C.R.I.1974); *Turchin v. Butz*, 405 F.Supp. 1263 (D.C.Minn. 1976). The court therefore concludes that there is jurisdiction under § 1337.

Each side has filed a motion for summary judgment and the facts have been stipulated as follows:

The plaintiff is the State of Louisiana, through the Department of Health and Human Resources, and/or its predecessors, which has its legal domicile in the City of Baton Rouge, Louisiana.

The defendant is the Honorable John Block, Secretary of United States Department of Agriculture, who officially resides in the City of Washington, District of Columbia.

Pursuant to the provisions of the Food Stamp Act of 1964 (Public Law 88–525, 7 U.S.C. §§ 2011–2025), the United States Department of Agriculture and the State of Louisiana, through the Department of Health and Human Resources and/or its predecessors, entered into the necessary agreements for the operation of a food stamp program in Louisiana. A copy of the "state plan of operation," without exhibits and amendments, is attached to the complaint as Exhibit A. On the basis of this "state plan of operations," as extended and renewed by the parties, plaintiff is and was, at all times pertinent to these proceedings, administering and operating a food stamp program in Louisiana.

At all times pertinent hereto, plaintiff had contracted with the City of New Orleans, Parish of Orleans, Louisiana, for the issuance of food stamps to eligible recipients in Orleans Parish, Louisiana, pursuant to the provisions of the Food Stamp Act of 1964. This contract has been renewed and entended by the the parties; and a food stamp issuance program is currently in operation in Orleans Parish, Louisiana.

The food stamp program is presently carried out under the Food Stamp Act of 1977, as amended (Title XIII, Public Law 95–113, 7 U.S.C. 2011–2027) (Supp. 1, 1977), September 29, 1977. At all times pertinent to this matter, however, the rights and obligations of the parties were those set forth in the above-cited Food Stamp Act of 1964 and the regulations, Food and Nutrition Service Instructions and the state plan of operation in effect as of January 31, 1977.

120

At all times pertinent hereto, the City of New Orleans maintained the Jackson Avenue Issuing Office as a food stamp storage facility and as an office for distributing food stamps to eligible recipients in the Parish.

On or about January 31, 1977, approximately $478,000.00 worth of serially numbered food stamp coupons (face value) was taken from the safe and/or premises of the Jackson Avenue Issuing Office by criminal acts of burglary. All but $138,832.00 (face value) worth of the stolen food stamp coupons was subsequently recovered.

At all times material hereto, it was impossible for the plaintiff to determine which food stamps had and which stamps had not been presented for redemption, regardless of whether said stamps had been stolen or had been issued through approved procedures to eligible recipients.

Due to the volume of food coupon redemptions through the Federal Reserve System, it is, as a practical matter, virtually impossible for the defendant to determine if any coupon or coupons, whether issued through approved procedures to eligible recipients or stolen, has been redeemed. It is also impossible for defendant to determine if any of the stolen coupons remain unredeemed or that unredeemed coupons, if any, will not be redeemed in the future.

Following the January 31, 1977 theft of the food stamps, defendant asserted a claim for the face value of the unrecovered stolen food stamps ($138,832.00). Defendant further advised plaintiff that if the claim were not remitted by July 31, 1979, the amount of the claim would be set off against federal administrative funding (letter of credit) which plaintiff would otherwise receive.

If plaintiff establishes that any of the unrecovered stolen coupons have been recovered or destroyed, the amount of the said recovered or destroyed coupons will be deducted from defendant's claim.

The 1964 Food Stamp Act has been supplanted by a 1977 Act; since this loss occurred in 1977, prior to the effective date of the new Act, our determination is predicated upon the provisions of law in effect at that time, (Public Law 88–525, 7 U.S.C. §§ 2011–2025). The parties agree that the 1964 Act did not have any provision specifically authorizing the promulgation of regulations establishing state liability under the Act. Section 2013(c), however, authorizes the Secretary to "issue such regulations, not inconsistent with this Act, as he deems necessary or appropriate for the effective and efficient administration of the Food Stamp Program."

██ The Secretary has promulgated a regulation, 7 C.F.R. § 271.7(1), which imposes strict liability upon the states for "... coupons or funds lost as a result of thefts, embezzlements or unexplained causes...." The regulation further provides that the state is liable for the face amount of the coupons and:

"... coupons which are lost will be presumed to have been redeemed in the customary channels of redemption: Provided, that the State agency will be relieved of liability for such coupons which it establishes to the satisfaction of [the Secretary] were recovered or destroyed prior to presentation for redemption."

The 1977 legislation, which both parties agree has no application to the theft with which we are concerned, contains the following provision:

"Notwithstanding any other provision of this chapter, the State agency shall be responsible to the Secretary for any financial losses involved in the acceptance, storage, and issuance of coupons." 7 U.S.C. § 2016(f).

There are no reported decisions in the Fifth Circuit which consider the authority of the Secretary under the 1964 Act to promulgate the strict liability regulation. The authority relied upon by the Secretary is 7 U.S.C. § 2013(c), which authorizes, "regulations not inconsistent with this Act ... necessary or appropriate for the effective and efficient administration of the Food Stamp Program."

The issue has been presented to the United States District Court for the District of Maryland and the United States Court of Appeals for the Fourth Circuit. In *Hettleman v. Bergland*, 480 F.Supp. 782 (D.C.Md. 1979), reversed, 642 F.2d 63 (4th Cir. 1981), the district court held that the Secretary exceeded his authority in promulgating the contested regulation. The Fourth Circuit reversed, squarely holding that the regulation is not inconsistent with the purposes of the Act and that it was a valid and reasonable exercise of the Secretary's authority under Section 2013, to administer the Act effectively.

The State argues that the district court opinion should be followed here, while the Secretary urges that the opinion of the Court of Appeals is the better authority. Without detailing all of the reasons therefor, this court concludes that the opinion of the Fourth Circuit in *Hettleman v. Bergland*, is persuasive and that the regulation is a valid exercise of the Secretary's authority.

▮ The State next complains that even if the Secretary has authority to impose strict liability for stolen coupons, it is an unreasonable exercise of the Secretary's authority to impose a presumption that the stolen coupons have been redeemed. As noted earlier, the regulation also provides that stolen coupons are presumed to have been redeemed in the customary channels of redemption except that the state agency is relieved of liability for those which it establishes were recovered or destroyed. The state argues that this portion of the regulation places an impossible burden upon it and that it ought to be held strictly liable only for those coupons which the Secretary can establish were actually redeemed. In this connection, the state points out that the Secretary has all of the records and information concerning redemption.

It will be remembered that these food stamps or coupons are redeemable at face value by the Department of Agriculture and that they are "deemed to be obligations of the United States within the meaning of Title 18 United States Code Section 8." 7 U.S.C. § 2023(d). Thus, any coupon which is presented for redemption must be paid for by the government at face value and the Secretary's regulation imposes liability for full face value upon the states for stolen coupons.

The stipulation entered into admits that, "it was impossible for the plaintiff to determine which food stamps had and which had not been presented for redemption" and further provides:

"Due to the volume of food coupon redemptions through the Federal Reserve System, it is, as a practical matter, virtually impossible for the defendant to determine if any coupon or coupons . . . has (sic.) been redeemed. . . ."

Thus, the parties have stipulated that it is impossible for the state to determine whether any particular coupon has been redeemed and that "as a practical matter," it is virtually impossible for the defendant to make that determination.

This issue was not addressed by either the district court or the Court of Appeals in *Hettleman v. Bergland, supra.*

The presumption of redemption of stolen coupons eliminates the cost and effort that would be required to establish whether any particular stolen coupon was in fact presented for redemption and in view of the stipulation that it is "virtually impossible" for the Secretary to make such a determination, the regulation is certainly reasonable. It is not inconsistent with the objectives of the statute and it certainly facilitates the administration of the statute. The objective of the statute is to provide a method for lower income families to receive a nutritionally adequate diet through the distribution of food stamps. 7 U.S.C. § 2011. In the absence of such a presumption a factual dispute would arise after each theft or loss as to which coupons had been redeemed—a dispute which the parties have stipulated would be "virtually impossible" to resolve. This presumption of redemption furthers the purposes of the law by avoiding the diversion of effort from the Congressional objective into a series of costly

disputes over which stolen coupons have actually been redeemed.

The court concludes that the presumption of redemption is a valid exercise of the Secretary's authority.

 Under the 1964 Act, the cost of the benefits provided were born entirely by the federal government and the Secretary was authorized to pay each participating state a portion of its administrative costs. 7 U.S.C. § 2024(b). These administrative costs are covered under a so-called "letter of credit" and here the Secretary proposes to deduct the face value of the stolen and unrecovered coupons, $138,832, from the State's "letter of credit" if it does not pay for them. The Secretary relies upon the Federal Claims Collection Act of 1966, 31 U.S.C. §§ 951–953 and the regulations promulgated thereunder, as his authority.

This issue was not addressed in *Hettleman v. Bergland*. Section 952(a) provides:

"The head of an agency or his designee, pursuant to regulations prescribed by him and in conformity with such standards as may be promulgated jointly by the Attorney General and the Comptroller General, shall attempt collection of all claims of the United States for money or property arising out of the activities of, or referred to, his agency."

Under the authority of § 952(a), the Comptroller and the Attorney General have promulgated collection standards, 31 Fed. Reg. 13381 (1966), which the Secretary of Agriculture has adopted by reference. 32 Fed.Reg. 2805 (1967). The collection standards require the Secretary of Agriculture to "take aggressive action . . . to collect all claims of the United States for money . . . arising out of the activities of . . . [the] agency." 4 C.F.R. § 102.1 (1977). These same standards authorize the Secretary to collect claims "certain in amount" by "offset . . . in every instance where this is feasible." 4 C.F.R. § 102.3 (1977).

The Secretary of Agriculture, therefore, has not only the authority, but he is required to use every effort to recoup losses such as this one. In this instance, the

amount of the debt is certain and it is to be offset against an agency receiving compensation from the national government. Under these circumstances, the action is appropriate and within the authority of the Secretary. *United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *IML Freight, Inc. v. United States*, 639 F.2d 676 (Ct.Cl.1980).

For the foregoing reasons, the motion for summary judgment on behalf of plaintiff is hereby DENIED and the motion for summary judgment on behalf of defendant is hereby GRANTED. Judgment will be signed dismissing this action.