Charles E. Simmons Acting Secretary Kansas Department of Corrections Landon State Office Bldg., Suite 400-N Topeka, Kansas 6612-1284
Dear Mr. Simmons:
As acting secretary for the Kansas department of corrections, you request our opinion regarding the use of deadly force to prevent the escape of a committed sexually violent predator.
Upon a unanimous jury determination that a person is a sexually violent predator (predator), such person is committed to the custody of the secretary of social and rehabilitation services (SRS) for control, care and treatment for an indefinite period of time. L. 1994, ch. 316, sec. 7. A committed predator will be placed at the Larned correctional mental health facility. It is our understanding that pursuant to an arrangement with the secretary of the department of corrections (DOC), SRS will provide treatment to committed predators and DOC will provide emergency security back-up to SRS staff and perimeter security at the facility. In the event a committed predator attempts to escape from the facility, you ask whether and under what circumstances deadly force may be applied.
We initially note that limits on the permissible use of force by a law enforcement officer (including a DOC correctional officer), whether deadly or not, are established by potential criminal as well as civil liability for excessive use of force. Authority for a law enforcement officer's use of varying degrees of force in making an arrest, K.S.A.21-3215, reflects a legislative intent to immunize law enforcement officers against criminal liability for conduct which would otherwise be illegal. Jacobs v. City of Wichita, 531 F. Supp. 120 (1982) An officer who exceeds these permissible degrees of force may be subject to criminal prosecution, e.g. for aggravated battery. Likewise an officer who uses excessive force in making an arrest may be subject to civil liability for monetary damages for personal injuries. Dauggenbach v. Cityof Wichita, 233 Kan. 232 (1983); Berry v. The City of Phillipsburg,Kansas, 796 F. Supp. 1400 (1992).
The leading case concerning constitutional limits on use of force in making an arrest is Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694,85 L.Ed.2d 1 (1985). The court concluded:
 "[t]hat such [deadly] force may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." 471 U.S. at 3.
While Garner pertained to the arrest of an apparently unarmed burglary suspect, the court's analysis is instructive to the issue at hand and we therefore quote in some detail:
 "Whenever an officer restrains the freedom of a person to walk away, he has seized that person. While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment. [471 U.S. at 7]
. . . .
 "[T]o determine the constitutionality of a seizure `we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' Because one of the factors is the extent of the intrusion, it is plain that reasonableness depends on not only when a seizure is made, but also how it is carried out. [471 U.S. at 8]
. . . .
 "[T]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead. 471 U.S. at 11)
. . . .
 "[W]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given. [471 U.S. at 11-12.]" (Citations omitted.)
Following Garner, the court addressed a claim of excessive use of force in an investigatory stop in Graham v. Connor, 490 U.S. 386,109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) and held:
 "[t]hat all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other `seizure' of a free citizen should be analyzed under the Fourth Amendment and its `reasonableness' standard, rather than a `substantive due process' approach." 490 U.S. at 395. (Emphasis original.)
The test of "reasonableness" under the fourth amendment is not capable of precise definition or mechanical application, but must take into account the facts and circumstances of each particular case. In relation to an arrest, the facts and circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.
The foregoing cases set forth the law regarding use of force in relation to an arrest, investigatory stop or other seizure of a free citizen. Prior to Garner and Graham, Newby v. Serviss, 590 F. Supp. 591
(1984), decided the issue of whether the use of deadly force to prevent a convicted felon's escape from prison constituted unnecessary, and therefore excessive, force. In deciding that the use of deadly force appeared reasonably necessary, the court in Newby used a reasonableness under the circumstances standard in evaluating plaintiff's claim of excessive force. Drawing from two other cases, Garner v. Memphis PoliceDepartment, 710 F.2d 240 (6th Cir. 1983) and Albers v. Whitley,546 F. Supp. 726 (D.Ore. 1982), the court noted the following factors to be balanced against an escaping convict's fundamental interest in his own life: whether the officer has probable cause to believe that the escapee poses a threat to the safety of the officers or a danger to the community if left at large; whether the escapee has committed a violent crime; whether the officer has probable cause to believe the escapee is armed; whether the escapee will endanger the physical safety of others if not captured; the need for application of force; the relationship between the need and the amount of force that was used, and the exent of the injury inflicted.
Applying these factors the court determined that the officer had probable cause to believe the escapee had already been found guilty of a felony, possibly one of violence; by virtue of the escape, the escapee was involved in an act of desperation; the officer had probable cause to believe that any given escapee may be armed and pose a danger to the community; multiple warnings had been given; the officer had no reason to believe that the escape could be prevented by means other than the use of deadly force; the officer was not in a position to ensure that the force necessarily used would only disable the escapee. The court also considered the emergency nature of the situation which confronted the officer, the officer's lack of knowledge regarding whether the convict was in fact armed or had a history or violence and the officer's duty to prevent prisoner escapes. The court then found "as a matter of law under the circumstances of this case, the use of deadly force was not excessive."
The fourth amendment "reasonableness" approach in Newby is consistent with Garner and Graham and contrasts with the few older cases which tended to approve a blanket shoot-to-kill-felony-escapees approach. Seee.g. Jackson v. The State of Georgia, 76 Ga. 473 (1886) (homocide justifiable if necessary to prevent escaping felony convict.)
Based on the decisions in Garner and Newby, this office opined in 1985 that a correctional officer at a state penitentiary is not prohibited from using deadly force to prevent the escape of an inmate incarcerated for a felony, when such force is necessary to prevent or terminate the escape. Attorney General Opinion No. 85-151. However, we also hastened to caution correctional officers that "the facts and circumstances surrounding each incident must be evaluated in determining whether deadly force should be used."
We are here concerned with the seizure not of a free citizen (as inGarner and Graham), nor with a convicted felon serving a sentence (as inNewby), but of a person who has been involuntarily committed for an indefinite time following a jury determination that such person is a sexually violent predator. In other words, a unanimous jury has found beyond a reasonable doubt that the person "has been convicted of or charged with a sexually violent offense" and "suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence." L. 1994, ch. 316, sec. 2. We are thus dealing with a population of persons who have been predetermined to be sexually dangerous to "strangers or individuals with whom relationships have been established or promoted for the primary purpose of victimization." L. 1994, ch. 316, sec. 2. However this determination alone does not automatically and in all escape circumstances translate into an immediate threat of significant physical harm. Additionally, this population has been civilly committed for care and treatment, not incarceration following a felony conviction.
In the simplest of all possible worlds a black and white rule of law would provide guidance regarding the use of deadly force by law enforcement officers. Our world is, however, necessarily complex, including the world of sexually violent predators who attempt to escape. Thus, while an escaping sexually violent predator does not have an absolute right to be free from the use of deadly force, neither do DOC correctional officers have an absolute right to use deadly force in all circumstances to prevent the escape of a predator. Following the lead of the United States Supreme Court it is our opinion that where a DOC correctional officer has probable cause to believe that an escaping sexually violent predator poses a threat of serious physical harm during the escape, either to the officer or to others, it is not constitutionally unreasonable to prevent the escape by using deadly force.
We are mindful that the population of predators is one for which a determination of "likely to engage in predatory acts of sexual violence" has already been made. Nevertheless, based on our understanding of applicable case law, we are convinced that a shoot-to-kill policy for all predator escape circumstances would violate the fourth amendment's standard of reasonableness. Particular facts and circumstances must be taken into account, in particular whether the predator threatens serious physical harm during the escape. We are hopeful that the rationale and factors mentioned herein will provide guidance to DOC correctional officers who may be faced with the reality of whether to use deadly force to prevent the escape of a committed sexually violent predator.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Camille Nohe Assistant Attorney General
RTS:JLM:CN:bas