Francis N. HASKINS, Daniel E. Noble, and Irma Rodriguez, on behalf of themselves and all other persons similarly situated,

v.

Wayne A. STANTON, in his official capacity as Administrator of the Indiana Department of Public Welfare; John Seffrin, Ph.D., in his official capacity as a member of the State Board of Public Welfare; Arvella Stanton, in her official capacity as a member of the State Board of Public Welfare; Marion Hilger, in her official capacity as a member of the State Board of Public Welfare; Robert Watson, in his official capacity as a member of the State Board of Public Welfare; James Burnett, in his official capacity as a member of the State Board of Public Welfare; Allen E. Greene, in his official capacity as the Director of the State Food Stamp Division; John D. Kelley, in his official capacity as Director of the Lake County Department of Public Welfare; Francisco Gonzalez, in his official capacity as a member of the Lake County Board of Public Welfare; Oliver Dixon, in his official capacity as a member of the Lake County Board of Public Welfare; Dozier Allen, in his official capacity as a member of the Lake County Board of Public Welfare; John Bowman, in his official capacity as a member of the Lake County Board of Public Welfare; and Dolores B. Decker, in her official capacity as a member of the Lake County Board of Public Welfare.

Civ. No. H 80–392.

United States District Court,
N.D. Indiana,
Hammond Division.

Nov. 14, 1985.

Ivan E. Bodensteiner, Myrna Hart, Project Justice & Equality, Valparaiso University School of Law, Valparaiso, Ind., Judith M. Haller, Legal Services Program of Greater Gary, Inc., Gary, Ind., for plaintiffs.

Gary L. Shaw, Deputy Atty. Gen., Indianapolis, Ind., Dora A. Arechiga, County Representative, Lake County DPW, Gary, Ind., for defendant.

MOODY, District Judge.

## ORDER

This matter is before the Court on the Report and Recommendation of the United States Magistrate filed with this Court on September 25, 1985 following a hearing on the plaintiffs' Motion for Preliminary Injunction which the Magistrate conducted on March 28 and 29, 1985. The parties were granted until October 21, 1985 to file written objections to the Report and Recommendation and the plaintiffs have filed such objections.

The Report and Recommendation, as well as the findings contained therein, were prepared pursuant to the provision of 28 U.S.C. § 636(b)(3) and Local Rule M–3. The findings and recommendations were filed with this Court and mailed to the parties. Under § 636(b)(1)(C) the district court is required to conduct a *de novo* determination where objections to the Magistrate's report have been filed by the parties. 28 U.S.C. § 636(b)(1)(C). *Makich v. Allen,* 603 F.2d 1247, 1252 (7th Cir.1972). The Court has made an independent review of the file and the proposed findings and recommendations of the Magistrate. For reasons discussed below, the Motion for Preliminary Injunction is GRANTED.

## I.

The plaintiffs in this case are four classes of persons including:

Class A: All current and future food stamp applicants who qualify for expedited service;

Class B: All current and future food stamp applicants who qualify for regular service;

Class C: All eligible current and future food stamp recipients who apply for recertification;

Class D: All current and future food stamp applicants and recipients who are Hispanic and belong to households which contain no adults fluent in English as a second language.

These plaintiffs allege that the Administrator of the Indiana Department of Welfare, the members of the State Board of Public Welfare, the Director of the State Food Stamp Division, the Director of the Lake County Department of Public Welfare, and the members of the Lake County Board of Public Welfare are violating the Food Stamp Act of 1977, 7 U.S.C. §§ 2011–2025. The alleged violations include administrative mismanagement as well as six substantive violations of the Food Stamp Act. The six substantive claims are:

(1) Failure to effectively supervise and monitor the performance of Lake County in the taking and processing of food stamp applications and in handling recertifications for food stamp benefits. [Complaint, ¶¶ 38 and 39]

(2) Failure to accept and encourage the filing of an application on the same day a household initially contacts the Lake County Food Stamp Office. [Complaint, ¶¶ 40, 41 and 42]

(3) Failure to identify and provide eligible households, that complete the initial application process, an opportunity to participate in the food stamp program in violation of the applicable federal time limits. [Complaint, ¶¶ 43, 44, 45, 46 and 47]

(4) Failure to process applications for recertification in a timely fashion and thus have failed to provide eligible households with uninterrupted food stamp benefits. [Complaint, ¶¶ 48 and 49]

(5) Failure to enforce federal and state regulations under the Food Stamp Act toward some persons in Lake County, Indiana, while enforcing those same regulations toward other eligible applicants in Lake County and elsewhere in the state in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. [Complaint, ¶¶ 50 and 51]

(6) Failure to provide bilingual personnel and printed material to low income households who speak a language other than English.

## II.

Congress enacted the Food Stamp Program "to promote the general welfare, to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. §§ 2011 *et seq.* The program provides eligible households with food stamp coupons which the recipient households may use to purchase food at grocery stores certified by the United States Department of Agriculture. 7 U.S.C. § 2016. *See also,* 7 U.S.C. § 2012(g). The U.S.D.A. pays 100% of the program's benefits and at least 50% of the administrative costs of the program. 7 U.S.C. § 2013(a); 7 C.F.R. §§ 2771 *et seq.* The Indiana State Department of Public Welfare supervises the Food Stamp Program in Indiana and pays any administrative expense that the U.S.D.A. does not cover. In Lake County, the Lake County Department of Public Welfare administers the Food Stamp Program locally with funds provided by the Indiana D.P.W. and the U.S.D.A.

The U.S.D.A. has promulgated regulations to govern the operation of the Food Stamp Program, including standards for the timely processing of applications and reapplications for food stamps. 7 C.F.R. §§ 272.2(a)(2), 273.10(g)(1) and (2). These timeliness regulations require a State agency to provide eligible households with an authorization and the opportunity to obtain

their food stamp allotments within 30 days after they initially file a properly completed application for food stamp benefits. 7 C.F.R. §§ 273.2(g)(1) and (2). If the household causes a delay in determining food stamp eligibility, the State agency may take an additional 30 days to determine eligibility. 7 C.F.R. § 273.2(h).

Some households, because of their urgent needs, are eligible for expedited services entitling them to receive their benefits within five days of their initial application. 7 C.F.R. § 273.2(i). The State agency is required to design its application procedures to identify applications that are eligible for such expedited service. 7 C.F.R. § 272.2(i)(2)(i) and (II). Households with zero net income and destitute households qualify for such expedited service. 7 C.F.R. 2(i)(1)(i) and (II). Eligible households, whether entitled to expedited or normal processing, must apply periodically for recertification. 7 C.F.R. § 273.10(f).

The regulations also give households the right to file a food stamp application on the same day they first contact the food stamp office during office hours and require the state agency to document the date the application was first filed by recording the date on the application. 7 C.F.R. § 273.-2(c). The State agency must also provide bilingual program information and certification materials, and staff or interpreters if the estimated number of low-income households (single language minority) in a project area or area served by a certification office reaches a specified level. 7 C.F.R. § 272.4(b)(2) and (3). In some geographic regions the State agency must provide both bilingual program information and bilingual staff or interpreters. 7 C.F.R. § 272.4(b)(3). In other regions the number of low-income single language minority households is small enough that bilingual program materials alone are sufficient or that no bilingual information at all is required. 7 C.F.R. § 272.4(b)(2). The State agency is charged with the responsibility of developing estimates of the number of low-income single-language minority households and ensuring that certification offices provide the requisite bilingual ser-

vice. 7 C.F.R. § 272.4(b)(5) and (6). The regulations also charge the State with responsibility for proper administration of the Food Stamp Program and require the State to have a system for monitoring and improving its administration of the program. 7 C.F.R. § 275.1(a).

The regulations also provide methods by which to identify and correct deficiencies in the State's administration of the Food Stamp Program. 7 C.F.R. § 275.2. The State must establish a continuing performance reporting system to monitor program administration and operation. The reporting system must include the collection, analysis, and evaluation of data as well as planning, implementing, and monitoring of corrective action and reporting to the Food and Nutrition Service on program performance. 7 C.F.R. § 275.2(a). Corrective action planning is the process by which State agencies, with FNS approval, determine appropriate action to reduce or eliminate deficiencies in program operations. 7 C.F.R. § 275.16(a). The State agency is required to establish a system for monitoring and evaluating corrective action and to ensure that the corrective action is implemented and achieves the anticipated results within the time frames specified by the FNS. 7 C.F.R. § 275.19. When a corrective action plan fails to correct deficiencies, the State agency must reevaluate the deficiency and develop and implement new corrective actions. 7 C.F.R. § 275.19(c).

The regulations address the availability of and limits on injunctive relief for the FNS but do not provide comparable guidelines for situations in which the plaintiffs are private individuals such as in the case at bar. 7 C.F.R. § 276.5. The FNS may not seek injunctive relief to require Food Stamp Act compliance until it has first notified the State agency of the determination of noncompliance and has provided the State agency with a specific period of time to correct deficiencies. 7 C.F.R. § 276.5(b).

The Food Stamp Act contains an error rate reduction program that requires the Secretary of Agriculture to reduce a State

agency's federally funded share of administrative costs if a State agency's payment error rate reaches a specified level. 7 U.S.C. § 2025(d)(2). "Payment error rate" is the value of all food stamp allotments issued to ineligible households or overissued to eligible households. 7 U.S.C. § 2025(d)(1); 7 C.F.R. § 275.25(c)(2). Although the error rate reduction program is a method of quality control for some aspects of the State agency's operation, the error rate reduction program does not address problems of delays in processing applications or insufficient bilingual services. Therefore, whether the State agency was meeting these error rate reduction goals has no relation to whether the State agency was meeting the timeliness and bilingual services provisions of the Act.

■ At the hearing, Michael L. Madalon, the Director of the Lake County DPW, testified that the overall quality control error rate for Lake County was 6.1% for fiscal year 1984. The overall quality control error rate is an estimate of the combined active case error, payment error, underissuance error, and negative case error rates. 7 C.F.R. § 275.25(c). These error rates do not measure compliance with the Food Stamp Act standards for timeliness of processing or for bilingual services, the deficiencies of which the plaintiffs complain. Instead, they gauge the rate of overissuances and underissuances of allotments and the number of applicants improperly denied or granted benefits. 7 C.F.R. § 275.25(c)(1)(5). Therefore, the testimony as to the quality control error rates is irrelevant in determining whether the defendants have violated the timeliness and bilingual services requirements of the Food Stamp Act.

### III.

To obtain a preliminary injunction, the plaintiffs must show (1) that they have no adequate remedy at law or will suffer irreparable harm if the injunction is denied; (2) that the plaintiffs have a reasonable likelihood of success on the merits; (3) that the harm they will suffer is greater than the harm the defendants will suffer if the injunction is granted; and (4) that the injunction will not harm the public interest. *ON/TV of Chicago v. Julien,* 763 F.2d 839 (7th Cir.1985).

### A. *Irreparable harm, or inadequate remedy at law*

■ The Magistrate made no conclusion of law as to whether the plaintiffs would suffer irreparable injury by a denial of the preliminary injunction. The plaintiffs request the Court to conclude that the plaintiffs have no adequate remedy at law and will suffer irreparable injury unless preliminary equitable relief is granted.

The Supreme Court has recognized the importance of a welfare recipient's right to assistance and the immediacy of that need. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Many members of the plaintiff classes are persons who have zero income. Alternative sources of food have also run dry. Evidence was adduced at the hearing to establish that because of insufficient poor relief funds, payments to vendors in Calumet Township are so many months behind that food vendors will no longer accept food vouchers from Calumet Township, where many of the plaintiffs reside. The Calumet Township Trustee has been unable to provide other forms of assistance such as utility and medical payments which might otherwise make available more household dollars and thereby make food stamp delays and benefit interruptions less harmful. Many of the plaintiffs in this case are persons and households in the grip of poverty. In light of this testimony, it is reasonable to conclude that, unless a preliminary injunction issues to prevent delays and interruptions in food stamp benefits, the plaintiffs may be deprived of food. The deprivation of this basic human need is extremely serious and is quite likely to impose lingering, if not irreversible, hardships upon recipients. *Smith v. Miller,* 665 F.2d 172, 177 (7th Cir.1981).

The Food Stamp Act requires every participating state to adopt a program for

granting fair hearings and prompt determinations of claims by households aggrieved by the action of the State agency. 7 U.S.C. § 2020(e)(10); *Tyler v. Mmes. Pasqua & Toloso,* 748 F.2d 283, 286 (5th Cir.1984). The Indiana DPW has adopted a fair hearing procedure which complies with 7 U.S.C. § 2020(e)(10). Indiana Food Stamp Manual, § 1000. Even if this fair hearing is effective and provides a remedy for some of the plaintiffs, it applies only to reductions or termination of benefits. Therefore, it does nothing to redress the State's violations that are preventing households from obtaining timely review of their initial food stamp application. In light of the evidence that the denial of a preliminary injunction may deprive many low-income households of their sole source of food, the court concludes that the plaintiffs have sufficiently shown that they would suffer irreparable injury by a denial of preliminary injunction.

### B. *Likelihood of success on the merits*

■ The Magistrate found that the defendants were violating several provisions of the Food Stamp Act by their improper administration of the Indiana Food Stamp Program. Specifically, evidence at the hearing established:

(1) that the defendants have violated 7 U.S.C. § 2020(e)(2) and (6) and 7 C.F.R. § 273.2(c)(1) by refusing to permit persons requesting food stamp assistance to file an application form for participation in the food stamp program on the same day that contact with the food stamp office was first made and had violated 7 C.F.R. § 273.2(c)(2) by failing to encourage households to file food stamp applications on the same day they first contact the food stamp office;

(2) that the defendants have violated 7 U.S.C. § 2020(e)(6) and (9) and 7 C.F.R. § 273.2(i)(3) by failing to provide food stamp coupons to zero net income households and destitute households within five days after the date of application and have violated 7 C.F.R. § 273.2(i)(2) by failing to design their food stamp

application figures to identify households eligible for such expedited service;

(3) that the defendants have violated 7 U.S.C. § 2020(e)(4) and (6) and 7 C.F.R. § 273.14 by failing to process recertifications in a timely fashion and by failing to provide uninterrupted food stamp benefits to eligible households no later than one month after the receipt of the household's last food stamp allotment;

(4) that the defendants have violated 7 U.S.C. § 2020(e)(3) and (6) by failing to complete certification of and provide an allotment retroactive to the period of application to any eligible household within 30 days of its filing of an application.

The Magistrate made Conclusions of Law as to the violations stated above and the parties have not objected to these conclusions. The Court accepts these Conclusions of Law and the Findings of Fact on which these Conclusions are based. These violations also demonstrate that the defendants have violated 7 C.F.R. § 276.-1(a)(3) which requires state agencies to "be responsible for efficiently and effectively administering the Food Stamp Program by complying with the provisions of the [Food Stamp] Act, the regulations issued pursuant to the Act, and the FNS [Food and Nutrition Service]-approved State Plan of Operation."

■ The plaintiffs have a great likelihood of success on the merits on their claims that the defendants have violated the statutes and regulations cited above. In addition, the Court finds that the plaintiffs have established a great likelihood of success on the merits of their claim that the defendants have violated 7 U.S.C. § 2020(e)(1)(B) by failing to use appropriate bilingual personnel in administering the Federal Food Stamp Program in Lake County and on their claim that the defendants have violated 7 C.F.R. § 272.4(b) by failing to develop estimates of the number of low-income single-language minority households in each project area and certification office.

In response to the Plaintiffs' Interrogatories, Defendant Lake County DPW stated

that it does not keep records of the total number of food stamp recipient households in Lake County in which the head of the household has a Spanish surname. County Defendant's Response to Plaintiffs' Revised Interrogatories, August 9, 1984, Response No. 3. The County also admitted that it did not keep records of the total number of food stamp recipient households in Lake County in which the adults are fluent only in Spanish. Response to Revised Interrogatories, August 9, 1984, Response No. 4. The County also admitted that it did not keep records of the total number of food stamp applicant households headed by a person with a Spanish surname or records of the total number of food stamp applicant households in which the adults were fluent only in Spanish. Response to Revised Interrogatories, Response No. 7. The County also admitted that it had no method or system for identifying food stamp households in which the adults are not fluent in English and that it has taken no steps toward implementing such a method or system. Response to Revised Interrogatories, Response Nos. 9 and 10.

Title 7 C.F.R. § 272.4(b)(6) requires the State agency to develop estimates of the number of low-income single-language minority households by using census data and knowledge of project areas and areas serviced by certification offices. If these information sources prove inadequate, the regulations require each certification office to record the number of single-language minority households that visit the office over a six-month period. The purpose of requiring the State agency to estimate the number of single-language minority households is to determine the extent to which each certification office and project area must provide bilingual services as specified in 7 C.F.R. § 272.4(b)(2) and (3). Because Lake County DPW has not been making these estimates, it is likely violating § 272.4(b)(2) and (3) by failing to provide sufficient bilingual certification materials and staff or interpreters.

Because the State defendants have not developed the requisite single-language mi-nority household estimates and have permitted the other violations of the Food Stamp Act to continue, it is likely that the plaintiffs will succeed on the merits of their claim that the defendants have violated 7 U.S.C. § 2020(a) and 7 C.F.R. §§ 271.4 and 275 by failing to adequately supervise and monitor the performance of the county departments.

## C. *Comparison of potential harm to plaintiffs and defendants*

■ The harm the plaintiffs would suffer by the denial of a preliminary injunction is far greater than the harm the defendants will suffer by the grant of injunctive relief in this case. Temporary injunctive relief against the defendants in this case would merely require them to perform acts which the Federal Food Stamp Act requires of the State as a condition of the State's receipt of food stamp benefits. Therefore, injunctive relief would impose no burden other than that already imposed by federal law.

The Court recognizes that granting injunctive relief may cause an increase in administrative work and may require changes in State agency personnel and procedures to correct the violations of the Food Stamp Act. This inconvenience cannot and does not outweigh the rights and needs of low-income households who are eligible for relief but whose relief has been blocked or delayed by defects in the Indiana DPW's application procedures.

## D. *Public interest*

■ The Food Stamp Act was enacted "to promote the general welfare, to safeguard the health and well-being of the nation's population by raising levels of nutrition among low-income households" by "alleviat[ing] hunger and malnutrition." 7 U.S.C. § 2011. Congress has given the interest of the public foremost consideration in placing certain conditions and restrictions on the States' participation in the program. The statute itself is a declaration of how the Food Stamp Program

should be run in order to best serve the public interest. Therefore, the public interest will be best served in the case at bar by granting injunctive relief to order the defendants to fulfill the statutory mandates of Congress in the Food Stamp Act.

## IV.

■ Because the plaintiffs have established that preliminary injunctive relief is appropriate, defendants are hereby ORDERED:

(1) to permit persons requesting food stamp assistance to file an application form for participation in the food stamp program on the same day that such persons first contact the food stamp office in person or by telephone (7 U.S.C. §§ 2020(e)(2) and (6) and 7 C.F.R. § 273.2(c)(1));

(2) to encourage households to file food stamp applications on the same day that such households first contact the food stamp office (7 C.F.R. § 273.2(c)(2));

(3) to provide food stamp coupons to zero net income households and destitute households within five days after the date of application (7 U.S.C. §§ 2020(e)(6) and (9) and 7 C.F.R. § 273.2(i)(3));

(4) to design their food stamp application procedures to identify households eligible for five-day expedited service (7 C.F.R. § 273.2(i)(2));

(5) to process recertification applications in a timely fashion and to provide uninterrupted food stamp benefits to eligible households within one month after the receipt of the household's last food stamp allotment (7 U.S.C. §§ 2020(e)(4) and 7 C.F.R. § 273.14);

(6) to complete certification of and provide an allotment retroactive to the period of application to any eligible household within 30 days of its filing of an application (7 U.S.C. §§ 2020(e)(3) and (6));

(7) to use appropriate bilingual personnel in administering the Food Stamp Program in Lake County (7 U.S.C. §§ 2020(e)(1)(B));

(8) to provide Program informational materials in appropriate languages in project areas with less than 2,000 low-income households, if approximately 100 or more of those households are of a single-language minority (7 C.F.R. § 272.4(b)(2)(i));

(9) to provide Program informational materials in appropriate languages in project areas with 2,000 or more low-income households if approximately 5 percent or more of those households are of a single-language minority (7 C.F.R. § 272.4(b)(2)(ii));

(10) to provide each individual certification office with bilingual certification materials and with a bilingual staff person or interpreter if that office provides services to an area containing approximately 100 single-language minority households (7 C.F.R. § 272.4(b)(3)(i)). Bilingual staff persons or interpreters shall be assigned to each certification office which services such areas.

(11) to provide each project area with bilingual certification materials and with a bilingual staff person or interpreter if that project area has a total of less than 100 low-income households if a majority of those households are of a single-language minority (7 C.F.R. § 272.4(b)(3)(ii)).

It is further ORDERED that the State defendants shall establish a continuing performance reporting system to monitor program administration and program operations. 7 C.F.R. § 275.2(a). The continuing reporting system shall include all data necessary to establish compliance with this Order. In addition, the State is hereby ORDERED to submit a corrective action plan to the Court within 60 days. The report shall outline steps the State defendants have taken to establish and implement procedures by which they can ensure continued compliance with this Order and with

federal statutes and regulations governing the Food Stamp Act.

Failure to comply strictly with the terms of this Order may result in a finding of contempt against the violating parties. Other courts have imposed severe and burdensome penalties in contempt cases involving deprivation of welfare recipients' rights. *See, e.g. Smith v. Miller*, 665 F.2d 172 (7th Cir.1981) in which a Court of Appeals upheld district court order that applications not timely granted or denied be automatically approved and *Fortin v. Commissioner of Massachusetts Department of Public Welfare*, 692 F.2d 790 (1st Cir. 1982) in which a Court of Appeals upheld district court order requiring State Department of Public Welfare to pay $100.00 fine to each eligible applicant whose eligibility determination is delayed up to 30 days and an additional $100.00 for every 60-day period of delay thereafter. The defendants are granted a 120-day period during which to implement the terms of this Order. Thereafter, this Court will entertain Petitions for Civil Contempt if it is established that the defendants have violated this Order.