Jacquelyn GRIFFIN, et al., Plaintiffs,

v.

Gregory L. COLER, Director, Illinois Department of Public Aid, Defendant-Third-Party Plaintiff,

v.

John R. BLOCK, Secretary, United States Department of Agriculture, et al., Third-Party Defendants.

No. 85–2413.

United States District Court, C.D. Illinois, Danville Division.

June 3, 1986.

---

Diane Sauer, Valerie McWilliams, Champaign, Ill., for plaintiffs.

Laruel Black Rector, Owen M. Field, Asst. Attys. Gen., Welfare Litigation Div., Chicago, Ill., for defendants.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

BAKER, Chief Judge.

The plaintiffs are food stamp recipients. They seek declaratory, injunctive, and com-

pensatory relief pursuant to an implied right of action to enforce the Food Stamp Act of 1977, as amended, specifically, 7 U.S.C. § 2017(d), and implementing regulations, 7 C.F.R. § 271 *et seq.* The plaintiffs also allege due process violations and seek relief under 42 U.S.C. § 1983. Jurisdiction is granted to the court under 28 U.S.C. § 1331, 1343(a)(3).

The plaintiffs' motion for summary judgment and motion for class certification are before the court. In addition, the defendant's cross-motion for summary judgment is pending. These motions were submitted after a hearing on the motion for preliminary injunction in which the court consolidated preliminary injunction issues with the trial on the merits. *See* Fed.R.Civ.P. 65(a). Two additional motions involving the third-party complaint are pending but have not been argued and will not be ruled upon in this order.

## STATUTORY AND REGULATORY FRAMEWORK

The food stamp program is a joint federal and state undertaking operated pursuant to the Food Stamp Act of 1977, as amended, 7 U.S.C. § 2011 *et seq.*, and implementing regulations 7 C.F.R. § 271 *et seq.* The overall food stamp program is administered by the Food and Nutrition Service of the Department of Agriculture ("FNS"). Each state which participates in the program must develop a plan for submission and approval by FNS. 7 U.S.C. § 2020. Each state's plan is implemented and administered by an appropriate state agency. The federal government, through the USDA, finances one hundred percent of food stamp benefits and fifty percent of the administrative costs associated with participating states' programs. The remaining fifty percent of administrative expenses is the individual state's responsibility. 7 U.S.C. §§ 2013, 2025, and 2027. Illinois' food stamp program is administered by the defendant as director of the Illinois Department of Public Aid, a State agency (Public Aid).

Eligibility for participation in the food stamp program and benefit amounts are based upon need which is determined according to household size and income and resource standards established by the Secretary of the United States Department of Agriculture. 7 U.S.C. § 2014(b). State agencies implementing the food stamp program must administer the program in accordance with the standards established by the Secretary of the United States Department of Agriculture. 7 U.S.C. § 2020(d).

The plaintiffs bring this action to enjoin the defendants from using a procedure for determination of benefit amounts which deprives them of needed food stamp benefits. They seek to represent a class of all persons in Illinois who are similarly situated. The plaintiffs challenge the defendant's policy of benefit determination which budgets as a recipient's income, the value of welfare overpayments which have been withheld from the plaintiffs.[1] In particular, the defendant's policy requires that funds being withheld from Supplemental Security Income (SSI) recipients, and Aid to Families with Dependent Children (AFDC) be counted as income.[2] The benefit

---

1. On May 10, 1985, the defendant published final regulations in the Illinois Register which officially implemented its policy requiring that all moneys withheld from AFDC or SSI welfare benefits, to recoup overpayments resulting from both intentional and unintentional client errors, be counted as income under the food stamp program. The Illinois administrative code provision dealing with unearned income, ch. 89, § 121.30, was amended as follows:

   (b) The penalty amount imposed for failure to comply with a Federal, State or local welfare program's requirement is considered available unearned income in the determination of eligibility and coupon allotment. For the purposes of this section a penalty amount

is defined as moneys recouped for client error under the aid to families with dependent children program or the federal supplementary security income program.

9 Ill.Reg. 6810–11 (adopted on May 10, 1985) (emphasis added).

2. The SSI program is a federal undertaking operated pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, and implementing regulations, 20 C.F.R. § 416 *et seq.* The SSI program provides financial assistance to needy, aged, blind, and disabled individuals and is administered by the Social Security Administration.

amounts at issue have been withheld because of previous overpayments of either SSI or AFDC benefits. As a result of this "budgeting" of withheld benefits, the plaintiffs are denied the quantity of food stamps which is appropriate for the actual amount of income received by each of them. The defendant's policy applies to all overpayments caused by any client error, regardless of whether that error was intentional or unintentional. The plaintiffs contend that since this policy does not distinguish between intentional and unintentional errors, it violates the Food Stamp Act, 7 U.S.C. § 2017(d), the implementing regulations, 7 C.F.R. §§ 273.9(b)(5)(i) and 273.-11(j), and thus is invalid under the Supremacy Clause of the United States Constitution.

Additionally, the plaintiffs characterize the defendant's policy to count withheld benefits for food stamp purposes as an "adverse action" taken against them. Federal regulations require the defendant to notify individuals affected by an adverse action and to provide them with an opportunity for a fair hearing on the decision. 7 C.F.R. §§ 273.13 and 273.15. Failure to notify affected individuals of an adverse action violates the Food Stamp Act, 7 U.S.C. § 2020(e)(10) and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### FINDINGS OF FACT

At trial the plaintiffs presented testimony concerning the experience of two of the named plaintiffs, Jacquelyn Griffin and Ida Harris. Jacquelyn Griffin testified that the defendant's policy was applied to her at the time this action was filed, and as a result, she was receiving fewer food stamps than her family's actual income would have entitled her to receive. Public Aid had determined that her previous AFDC overpayment was caused by client error and would be included in computing her income for food stamp entitlement. Jacquelyn Griffin testified that she did receive notice that the recouped money was being counted as income but that no notice was sent informing her of the reason for this adverse action or of her right to appeal Public Aid's ruling.

Jacquelyn Griffin applied for AFDC in December of 1984. Her husband was told to apply for unemployment benefits as a prerequisite to receiving AFDC. When her husband received notice from the unemployment office indicating that he would receive such benefits and specifying the amount of benefits and the length of time the benefits would be provided, plaintiff Griffin took the notice to her intake caseworker at Public Aid, Wanda Bankhead. Griffin testified that she thought the unemployment office would notify Public Aid each month of the amount of benefits received by her. Griffin testified that she did not realize she also had to report the income on the monthly report forms she submitted to Public Aid each month. Based on her monthly report forms, in which she did not mention the unemployment benefits, AFDC and food stamp overpayments occurred.

Cathy Willis testified that she was Griffin's caseworker at Public Aid. She determined that the food stamp overpayment, which arose from the same set of facts as the AFDC overpayment, was the result of unintentional client error. Cathy Willis' determination, however, applied only to the food stamp overpayment, not the AFDC overpayment. No determination of intentional or unintentional client conduct was made regarding the AFDC overpayment. The only determination made was that the overpayment resulted from client error and therefore the defendant's budgeting policy applied.

Ida Harris testified as well. She said that the defendant's budgeting policy ap-

The AFDC program is a joint federal and state undertaking operated pursuant to Title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.*, and the implementing regulations, 45 C.F.R. § 201.0 *et seq.* The federal government reimburses participating states on a percentage basis for subsistence benefits paid to eligible needy families with dependent children who are deprived of parental support. The Illinois AFDC program is administered by the Illinois Department of Public Aid.

plied to her at the time this action was filed and thus she received fewer food stamps than her actual income would have required. Public Aid determined that a previous SSI overpayment was caused by client error and thus the food stamp budgeting policy applied. No determination was made whether the client error was intentional or unintentional. No notice was sent to Ida Harris informing her of the adverse decision or of her right to appeal it.

Harris testified that she failed to inform Social Security of the income of a member of her household, a man with whom she was living. Social Security took the position that, since Mrs. Harris held herself out to be married to the man, the man was responsible for Harris' support.[3] When the man's income was taken into account, Social Security claimed that an overpayment of $877.91 existed and began recovery of the overpayment by reducing Mrs. Harris' SSI check. Ms. Harris testified that she was on SSI because she was a "slow learner" and did not have much education. She testified that she did not know she was required to report the man's income.

Ellen Kordik, an advocate with the Welfare Rights Clinic at the University of Illinois College of Law, testified that in her opinion the food stamp amounts were wrongfully withheld from the plaintiffs. Ms. Kordik testified that the Public Aid does not notify food stamp recipients that its policy with regard to "non-compliance amounts" has been applied to them. Ms. Kordik further testified that, as a result of defendants' policy, plaintiff Griffin received $11.00 fewer food stamps than the budgeting of her actual family income would require for November, 1985, and would receive $50.00 fewer food stamps in January, 1986. Kordik also testified that the plaintiff Ida Harris received $11.00 a month fewer food stamps than she would have received if her recouped SSI benefits were not counted as income.

Plaintiff Norma Purgerson did not testify, but the defendant has admitted all of Purgerson's factual allegations with the exception of the allegation that Public Aid failed to provide her with an opportunity for a hearing. As a result of having the defendant's policy applied to her in December, 1985, Purgerson received fewer food stamps than a budgeting of her actual income would have required.

Purgerson's overpayment was caused by her continued receipt of AFDC benefits pending the outcome of an appeal. Since Purgerson lost that appeal, all benefits paid pending the appeal were considered to be overpayments. The issue in Purgerson's appeal was whether her husband was still incapacitated, thereby creating the family's continuing eligibility for AFDC benefits. Even though the decision on appeal was that Mr. Perguson was not incapacitated, the family reapplied for AFDC shortly thereafter and was again approved based upon Mr. Purgerson's incapacity. When the plaintiff Purgerson began receiving AFDC benefits again, those benefits were reduced to recover the earlier overpayment. Since the overpayment was not caused by an agency error, it was treated as client error, and resulted in an application of the defendants' policy and a reduction in food stamp payments.

James Logan testified that he is a senior food program specialist for FNS of the United States Department of Agriculture. The regional office in which he works is responsible for monitoring the compliance by the State of Illinois with the federal laws governing the food stamp program. Mr. Logan testified that he reviewed the Public Aid policy with respect to "non-compliance amounts" before it was implemented and concluded that the policy was in conflict with the applicable federal statute and regulations. Mr. Logan wrote two letters to the director of the Illinois Food Stamp Program informing him of Logan's conclusion. Those letters were drafted by

---

**3.** Under SSI regulations spouses are responsible for the support of each other; therefore, the income of a spouse is deemed to be available income to SSI recipients. 20 C.F.R. § 416.1160. "Spouse" is defined to include a person to whom an individual leads others to believe he or she is married, regardless of the existence of common law marriages in the state in which they reside. 20 C.F.R. § 416.180.

Mr. Logan but signed by Duston VanVleet. The letters said that overpayments being recouped from welfare benefits could not be counted as income for food stamp purposes unless the overpayment for which the funds are being recouped resulted from intentional client error. *See* Plaintiffs' Exhibits 5–A and 5–B.

The defendant claims in a letter submitted to the court after the proofs were closed that there are approximately 17,000 AFDC recipients in the process of making repayments from their AFDC cash grants. There are an unknown number of putative class members who formerly were subject to recoupment, but who are no longer receiving AFDC. The only means available to Public Aid to determine which Public Aid recipients are incorrectly having recoupment amounts counted as income for food stamp program purposes is to review manually each recipient's file. In the alternative, Public Aid could send notices to all recipients asking who is having an overpayment recovered and review the files of those who respond. Hearing procedures would have to be established, hearings held, and decisions rendered. The costs of establishing and implementating a plan of correction would be considerable.

The defendant also asserts that it would be an even greater burden to establish and implement a procedure that would ascertain the identity of supplemental security income recipients whose overpayments are being recouped. Public Aid cannot determine from its computerized information which food stamp recipients are also SSI recipients, let alone which SSI and food stamp recipients are having their SSI recoupment amount counted as income for deciding food stamp entitlement. Therefore, Public Aid either would have to search 75,000 to 100,000 active non-assistance case files manually or send an inquiry to each of those persons and then review the files of recipients who said overpayments were being received. The files of persons who formerly were subject to SSI recoupment action would also have to be reviewed.

## RELIEF REQUESTED

The plaintiffs request multiple forms of relief. First, they want the court to certify the plaintiffs as class representatives. Second, they seek prospective relief including: (1) A declaratory judgment that the Illinois Department of Public Aid policy on recouping welfare overpayments violates the Food Stamp Act, the Act's implementing regulations, and due process of law; and, (2) an injunction enjoining the defendant from continuing to include recouped benefit amounts as income in computing food stamp entitlements without regard to the cause of the overpayment, order the defendant to promulgate and implement a new policy which complies with the federal law, and ordering the defendant to provide the plaintiff class members with adequate and timely written notice of any new policy and of a right to appeal adverse decisions. Finally, the plaintiffs request in addition to prospective relief, compensatory relief which includes an award of wrongfully withheld food stamp benefits.

## ISSUES

The issues presented by the cross-motions for summary judgment are:

1. Does the Eleventh Amendment immunity present a jurisdictional bar to consideration of this suit, particularly in light of the most recent statement by the United States Supreme Court in *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)?

2. Is the Illinois Department of Public Aid violating the Food Stamp Act, 7 U.S.C. § 2017(d) when it classifies all "client error" as "intentional failure to comply with" the requirements of the federal benefits program?

3. Is due process denied recipients of food stamps by the Illinois Department of Public Aid's failure to notify them that recouped payments are being counted as income in the calculation of food stamps to be given to them; and is an opportunity for a hearing to challenge the agency action required by due process?

4. Is this class certifiable as presently defined?

5. What remedy, if any, is appropriate?

## DISCUSSION

### I. Jurisdictional Issues

■ The court directed that briefs be filed on the question of federal jurisdiction to provide the requested relief, in light of the recent Supreme Court rulings in *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (Pennhurst II); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); and *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). This trilogy of cases presents an ongoing five-four split in the Supreme Court over the meaning of the Eleventh Amendment. Statements in the majority opinions in these three cases indicate that the Eleventh Amendment grants states immunity from federal court jurisdiction in all suits except those in which one of the well-established exceptions to immunity is applicable.[4] What triggers the immunity of the Eleventh Amendment is not absolutely clear and whether the Eleventh Amendment is now construed as a restriction on the Article III jurisdiction of the federal courts over the states is also clouded. Before *Atascadero* the Eleventh Amendment immunized a state from suit in federal court wherever the state was the real party in interest. Suing state officials rather than the state itself did not avoid the bar of the Eleventh Amendment. The state is the real party in interest whenever a judgment is sought which will be satisfied from the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the state government from acting, or to compel it to act. *Pennhurst II*, 465 U.S. at 101, n. 11, 104 S.Ct. at 908, n. 11 (1984); *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963).

The Supreme Court has developed an exception to the bar against suits in federal court where the state is the real party in interest; the exception is authorized to restrain state officials from acting unconstitutionally. *Ex Parte Young*, 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908). The *Ex Parte Young* exception to the Eleventh Amendment immunity has been used often to challenge state official action in federal court. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hutto v. Finney*, 437 U.S. 678, 690, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978). However, the *Young* exception has been applied only in challenges to programs involving the distribution of state funds. The plaintiffs in this case do not challenge the distribution of state funds. They are contesting the legality of the state's distribution of federal funds. In the past, federal courts have found subject matter jurisdiction over such challenges to food stamp distribution in several statutory sources. *See e.g. Foggs v. Block*, 722 F.2d 933, 941 n. 6 (1st Cir.1983), *rev'd on other grounds*, *Atkins v. Parker*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985); *Harrington v. Blum*, 483 F.Supp. 1015, 1021 (S.D.N.Y. 1979). *But cf. Biggs v. Block*, 629 F.Supp. 1574, 1581 n. 7 (E.D.N.Y.1986) (suggests that administrative costs to state may bar availability of remedy against state).

Jurisdiction over plaintiffs' statutory and constitutional claims is conferred upon the court by 28 U.S.C. §§ 1331[5] and 1337.[6]

---

**4.** *Pennhurst II*, 465 U.S. at 98, 104 S.Ct. at 906 (principal of sovereign immunity is a constitutional limitation on the federal judicial powers established in Article III); *Atascadero*, 473 U.S. at 252, 105 S.Ct. at 3153 (Brennan, J., dissenting) ("the court's doctrine holds that the judicial authority of the United States does not extend to suits by an individual against a state in federal court"); and *Green*, 474 U.S. at 68, 106 S.Ct. at 425 (because of the Eleventh Amendment, states may not be sued in federal court unless they consent to it in unequivocal terms or unless the

Congress pursuant to a valid exercise of power unequivocally expresses its intent to abrogate the immunity).

**5.** "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331.

**6.** "(a) The district court shall have original jurisdiction of any civil action or proceeding aris-

The Food Stamp Act, 7 U.S.C. § 2011 *et seq.*, has uniformly been held to be an act of Congress regulating commerce. *State Department of Health and Human Resources v. Bergland*, 531 F.Supp. 118 (M.D. L.A.1982); *Moreno v. United States Department of Agriculture*, 345 F.Supp. 310 (D.D.C.1972), *aff'd* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Turchin v. Butz*, 405 F.Supp. 1263 (D.Minn.1976); *Tyson v. Norton*, 390 F.Supp. 545 (D.Conn. 1975); *Irizarry v. Weinberger*, 381 F.Supp. 1146 (S.D.N.Y.1974); *California Legislative Council for Older Americans v. Weinberger*, 375 F.Supp. 216 (E.D.Cal. 1974); *Giguere v. Affleck*, 370 F.Supp. 154 (D.R.I.1974). Jurisdiction over the plaintiffs' constitutional claims is also conferred upon the court by 28 U.S.C. § 1343(a)(3).[7] Section 1343(a)(3) is the jurisdictional statute for actions brought pursuant to 42 U.S.C. § 1983. The allegations of a due process violation support a claim brought pursuant to 42 U.S.C. § 1983.

The defendant asserts in his brief on jurisdiction that *Pennhurst II, Atascadero* and *Mansour* indicate a new understanding of Eleventh Amendment immunity. (The dissenters in those three cases do characterize the majority's opinions as deviations from past precedent which cannot be explained or justified.) The defendant maintains that the new understanding of the Eleventh Amendment is simply that a state cannot be sued in federal court without a waiver or Congressional abrogation of the immunity. The plaintiffs respond by pointing out that the United States Supreme Court has not explicitly overturned precedent which indicates that jurisdiction is proper in this case. Because food stamps are entirely financed by federal funds through the United States Department of Agriculture, the only costs borne by the state are administrative. Administrative costs which result from compliance with an order of a federal court traditionally have not triggered Eleventh Amendment immunity. *See Hutto v. Finney*, 437 U.S. 678, 691, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978); and *Milliken v. Bradley*, 433 U.S. 267, 293, 97 S.Ct. 2749, 2764, 53 L.Ed.2d 745 (1977) (Powell, J., concurring in judgment) ($6,000,000 costs of desegregation of Detroit School System deemed ancilliary costs to federal order).

■ The defendant's position that the recent Supreme Court decision created a jurisdictional bar to suits against state officials for violations of the Food Stamp Act is untenable. A state may be sued in federal court even absent a waiver or an abrogation of the Eleventh Amendment immunity. This court need look no further for authority than the recent Supreme Court decision *Atkins v. Parker*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985). In *Atkins*, the Commissioner of the Massachusetts Department of Public Welfare was sued in federal court pursuant to Section 1983. The plaintiffs in *Atkins* challenged the sufficiency of the notices sent to the recipients of food stamp benefits of a legislative change that might result in the reduction of their benefits.[8]

The plaintiffs in *Atkins* sought both prospective and retroactive injunctive relief. Reviewing courts never addressed the issues of Eleventh Amendment immunity nor the limits of federal jurisdiction in their treatment of this challenge. The district court ordered that a revised notice be issued and that withheld benefits be reinstated. 53 U.S.L.W. at 4687 and 4688. The United States Court of Appeals for the First Circuit agreed with the district court's holding regarding the deficiency of the notice but reversed the district court's order to reinstate benefits. The Supreme Court granted review of the rulings on

---

ing under any Act of Congress regulating commerce...." 28 U.S.C. § 1337.

**7.** (a) The district court shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (3) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.
28 U.S.C. § 1343(a)(3).

**8.** 95 Stat. 360; 7 U.S.C. § 2014(e).

both liability and remedy. The Court concluded that notice was lawful and that no liability attached to the state defendants. However, the Court deemed moot the issue of the appropriateness of the district court's order to provide retroactive relief.

The posture of this case is no different than that of the plaintiffs before the district court in *Atkins v. Parker*. Because jurisdiction was not questioned by the United States Supreme Court in *Atkins*, this court will rely on that case as authority for asserting jurisdiction over state defendants in federal court even absent a waiver and abrogation of the Eleventh Amendment immunity. Thus it seems that 42 U.S.C. § 1983 and the Food Stamp Act are proper vehicles for conferring jurisdiction over challenges to state policies implementing the Food Stamp Act.

However, the court is still left with conflicting statements by the United States Supreme Court regarding a federal court's power to fashion a remedy for the challenged state officials actions. The most recent Supreme Court decision on the Eleventh Amendment, *Green v. Mansour*, uses language implying that the sole remedy available to plaintiffs in federal court is prospective injunctive relief to enjoin a continuing violation of federal law. *Green* leaves unanswered the recurring question: What exactly triggers the Eleventh Amendment immunity? In *Green* the plaintiffs were recipients of benefits from the AFDC program. AFDC is a jointly funded program involving contributions from both the state and the federal treasuries. The plaintiffs in *Green* challenged the State of Michigan's policy to calculate benefits. The complaint alleged that Michigan policies and regulations violated 42 U.S.C. § 1983 by inflating the class members' earned income thereby causing a reduction or termination of AFDC benefits contrary to the applicable federal law. A legislative change which occurred during the course of litigation rendered the substantive allegations moot. However, the plaintiffs continued to pursue their claims for declaratory relief related to past violations of federal law.

The Supreme Court denied declaratory relief to the plaintiffs. The Court ruled that relief is barred by the Eleventh Amendment. In *Green* the plaintiffs did not seek monetary relief. They sought a court order directing Michigan to issue notice to AFDC recipients that a federal court had ruled unconstitutional certain administrative actions by the state. The Court held that the requested order did not fit the *Ex Parte Young* exception to the Eleventh Amendment because the order did not issue to enjoin a continuing violation of federal law. The Supreme Court concluded that declarative relief in *Green* would only serve as an alternative to a judgment against the state treasury because the recipients of the notice would be able to use the declaration in state court to collect damages from the state.

The *Green* decision is significant in this case because it summarizes the Court's policy to restrict federal jurisdiction over state officials. Justice Brennan in his dissent succinctly summarizes the new doctrine of immunity being shaped by these recent decisions. He writes at 54 U.S.L.W. 4015:

> Basically what the court is doing, as it admits in this case, is balancing the Eleventh Amendment and the supremacy clause. . . . If relief is sought against continuing violations, the court finds that the supremacy clause outweighs the Eleventh Amendment; but if relief is requested against past violations, the court determines that the Eleventh Amendment outweighs the supremacy clause. The court cites no constitutional authority for this balancing test and has not offered, and I suspect cannot offer, a satisfactory analytical foundation for it.

Under this new interpretation of Eleventh Amendment immunity, the plaintiffs' request for prospective relief is certainly appropriate. They show a continuing violation of federal law. The defendant is acting in violation of the Food Stamp Act and the due process clause of the Fourteenth Amendment and should be enjoined from continuing those violations.

■ The plaintiffs maintain, in addition, that they are entitled to an order directing

the defendant to reimburse the class members for wrongfully withheld food stamp benefits because those benefits are completely funded by federal moneys. In opposition, the state maintains first, that such retrospective relief would be funded initially from the state treasury and second, that reimbursement by the federal government is not guaranteed. Surely the resolution of a question of Article III jurisdiction should rest upon something more substantial than the accounting methods employed by the state. The fact that the state would bear the initial burden and then seek reimbursement from the United States should not control the question of federal court jurisdiction to correct an infraction of federal law.[9] The court relies on the Supreme Court decision *Atkins v. Parker* as implicit authority for a federal court's power to consider the merits of claims for all forms of requested relief by the plaintiffs.

■ The defendant's final challenge to jurisdiction is that there is no private right of action to enforce the Food Stamp Act. The defendant relies on *Tyler v. Pasqua*, 748 F.2d 283 (5th Cir.1984); and *Almond Hill School v. United States Department of Agriculture*, 768 F.2d 1030, 1035–38 (9th Cir.1985). The *Tyler* court held there was no private right of action under the Food Stamp Act because the court found nothing in the legislative history to indicate that Congress intended a private remedy. This conclusion by the *Tyler* court is contrary to the ruling in a Northern District of Indiana decision by Judge Moody. *Haskins v. Stanton*, 621 F.Supp. 622 (N.D.Ind.1985), on appeal. In *Haskins*, the court found that a private right of action does exist to enforce the provisions of the Food Stamp Act. The *Haskins* court examined the legislative history of the Food Stamp Act and found compelling evidence that the Congress did intend that a private remedy be available to food stamp recipients. This court adopts the *Haskins* rationale.

## II. Class Certification

The defendant has raised objections to the definition of the class in the plaintiff's motion for class certification. The class definition offered by the plaintiffs is:

> All persons whose welfare benefits have been or will be recouped to recover an overpayment caused by alleged client error and who have had or will have the recouped funds counted by the Illinois Department of Public Aid as income for food stamp purposes.

The defendant objects to the class definition because class members do not share common questions of law and fact and because the claims of the class representatives are not typical of all class members. The defendant argues that the class, as defined, improperly includes individuals who have been convicted of fraud by deliberately deceiving welfare administrators. These convicted recipients cannot possibly contend that the recoupment of their food stamps was due to unintentional client error. The defendant urges this court to alter the definitions of the class in such a way so as to exclude individuals who have committed fraud.

■ The plaintiffs point out that the defendant cannot administer notice to his proposed class. Public Aid does not make a distinction between persons whose benefits have been recouped because of fraud and those recouped because of unintentional error. Indeed, this lawsuit seeks to force Public Aid to make this very distinction. The court finds that the present class definition properly embraces those food stamp recipients who share a common legal challenge based upon the denial of notice of the adverse determinations being made by Public Aid.

**9.** Recent scholarship indicates that the framers never intended to constitutionalize the doctrine of state sovereign immunity; consequently, the Eleventh Amendment was not an effort to re-establish, after *Chisholm v. Georgia,* 2 Dall. 419, 1 L.Ed. 440 (1793), a limitation on federal judicial power contained in Article III. Nor, given the limited terms and context in which the Eleventh Amendment was drafted, could the amendment's narrow and technical language be understood to have instituted a broad new limitation on the federal judicial power in cases "arising under" federal law whenever an individual attempts to sue a state. *Green v. Mansour,* 474 U.S. at 78, 106 S.Ct. at 431 (Brennan, J. dissenting).

The defendant also argues that certain class representatives do not fulfill the typicality requirement because they no longer are undergoing recoupment of overpayments. The plaintiffs respond that Purgerson and Daly were undergoing recoupments at the time of trial according to the computer printouts provided by the defendant. Furthermore, the plaintiffs maintain that the contested actions by the defendant remain "capable of repetition, yet evading review," and are therefore actionable. *See DeBrown v. Trainor*, 598 F.2d 1069 (7th Cir.1979) (food stamp recipient's class based challenge not rendered moot by agency's remedial action). The court is satisfied that the class representatives present claims that are typical of class members. The class will be certified as presently defined.

### III.  Statutory Violations

The plaintiffs' first claim for relief is based upon allegations of a violation of the Food Stamp Act, 7 U.S.C. § 2017(d).[10] This section of the Food Stamp Act requires that a recipient's food stamps not be increased in response to the recipient's decreased income where the decrease arose from recoupment of an overpayment caused by the recipient's "intentional" violation of program policies. Federal regulations require that recouped welfare benefits should be counted as budgeting income if the overpayment in question was caused by a recipient's intentional failure to comply with the welfare law.[11] However, federal regulations state the general rule that income *shall not include* money being recouped to recover an overpayment due to other than an intentional failure to comply with the regulations. 7 C.F.R. § 273.9(b)(5) (emphasis added).

The evidence shows that the policy of the Illinois Department of Public Aid which is articulated in 89 Ill.Admin.Code § 121.30, does in fact include recoupments from AFDC or SSI welfare benefits which have not resulted from an intentional failure to comply with welfare program requirements. The defendant issued a statement that Public Aid would consider all recoupments due to client error, without regard to cause, as an intentional failure to comply with the requirements of the welfare benefit programs. 9 Ill.Reg. 6882 (May 10, 1985). As a result, the plaintiffs argue that the defendant is illegally including in the calculation of a food stamp recipient's income recoupments due to unintentional or innocent client errors.

The plaintiffs argue that the Illinois defendant's policy is in violation of federal regulations. They argue that 7 C.F.R. § 273.11(j) requires the state defendants to set up procedures to identify whether benefits are being recouped because of an intentional violation:

*Households with a decrease in income due to intentional failure to comply.* The state agency shall insure that there is no increase in food stamp benefits to households on which a penalty resulting in a decrease in income has been imposed for *intentional* failure to comply with the federal, state, or local welfare program which is means tested and distributes publicly funded benefits. The procedures for determining food stamp benefits when there is such a decrease in income are as follows: (1) When a recipient's benefits under a federal, state, or local means tested program (such as but not limited to SSI, AFDC, GA) is decreased due to *intentional* non-compli-

---

**10.**  "(d) A household against which a penalty has been imposed for an intentional failure to comply with a Federal, State, or local law relating to welfare or a public assistance program may not, for the duration of the penalty, receive an increased allotment as the result of a decrease in the household's income (as determined under sections 2014(d) and 2014(e) of this title) to the extent that the decrease is the result of such penalty." 7 U.S.C. § 2017(d).

**11.**  "Income shall *not* include the following: (i) Moneys withheld from an assistance payment, ... to repay a prior overpayment received from that income source.... However, moneys withheld from assistance from another program ... for purposes of recoupment from a household and overpayment which resulted from the household's intentional failure to comply with the other program's requirement shall be included as income." 7 C.F.R. § 273.9(b)(5) (emphasis added).

ance, the state agency shall identify that portion of the decrease which is a penalty. The penalty shall be that portion of the decrease attributed to the repayment of benefits over issued as a result of the household's *intentional* violation. (2) The state agency shall calculate the food stamp benefits using the benefit amount which would be issued by that program if no penalty had been deducted from the recipient's income.

7 C.F.R. 273.11(j) (emphasis added). The plaintiffs read this section as imposing an affirmative duty on the defendant to somehow determine if recoupment is due to an intentional failure on the part of the food stamp recipient.

The defendant argues that the regulations do not impose such a duty. He points out that the federal government, specifically the Food and Nutrition Service (FNS), has left to the individual states the responsibility of defining "intentional". In fact, in the preamble to the rules and regulations, published on December 14, 1984, FNS specifically declined to define "intentional" beyond the language of the statute. FNS declined, stating that

> The food stamp program will accept [a state's determination of intentional failure] and consequently not increase the food stamp benefit. We cannot change another program's definition. When another program imposes a penalty, it is that program's responsibility to define intentional failure to comply. The purpose of the law is to reinforce another program's penalty.

The defendant argues that because AFDC makes no distinction between recoupment as a result of intentional or as a result of inadvertent client error, Public Aid can legally make no distinction. The defendant relies on the comment in 47 Fed.Reg. 5672 which presents a conclusion by the Social Security Administration, the agency charged with regulating the implementation of the AFDC program:

> One commenter suggested that we should not require states to recover overpayments that result from administrative errors. Response: We do not believe

that the statute permits exceptions to recovery nor does it differentiate based on the source of error. This includes overpayments that result from so-called technical errors....

A federal director of the food stamp program, upon review of the Public Aid program, came to the conclusion opposite to the defendant's. James Logan testified at trial that in his opinion Public Aid must differentiate between inadvertent and intentional errors when applying the new, non-compliance rule. In Mr. Logan's opinion the statutory language of Section 2017(d) is determinative. The statute requires that increased food stamps be denied only in those cases of recoupment for an *intentional* failure to comply.

The court is confronted with an interagency dispute concerning the meaning of a statutory provision. Unhappily, the court must step into this dispute and make the definitional determination that the federal agency charged with the authority and power to make that determination refuses to do. The legislative history of the statute persuades the court that the purpose of section 2017(d) was to uphold the penalty for fraud on welfare programs, not to punish innocent or inadvertent errors. The Congress wanted to deny increased benefits to food stamp recipients who were being fined for actually committing fraud upon other agencies.

The bottom line of the remedy suggested by the plaintiffs is an order by this court to the Illinois Department of Public Aid to set up procedures to make a distinction between clients who make intentional misrepresentations and those who commit unintentional errors in their applications for AFDC or SSI benefits. The plaintiffs in effect ask the court to order the Illinois Department of Public Aid to do something that was merely suggested by the federal regulations.

The following passage in the comments accompanying the promulgation of the final rule pertaining to the non-compliance policy is the focus of the court's concern:

> The proposed rule required that each state agency take appropriate action to

insure that food stamp benefits do not increase as a result of a non-compliance penalty. One commenter stated that the state agency has no way of knowing whether a reduction in a means-tested program is for intentional violation or for some other reason, such as, inadvertent error or a misunderstanding. For example, AFDC rules do not require that a state agency identify that a reduction is due to an intentional violation. While the department recognizes this problem, it cannot impose such a requirement for other programs. However, to increase the effectiveness of this provision, the department encourages state agencies to develop the capability to determine if a benefit is reduced because of a household intentional non-compliance. State agencies should be able to share AFDC information with food stamp workers (information affecting benefit levels reported to the AFDC program is considered to have been reported to the food stamp program). State agencies may have to strengthen their mechanisms for communicating between AFDC and food stamp workers to identify if a reduction is due to intentional non-compliance.

The court is puzzled by the tentative nature of the FNS directive. It is clear that the Food Stamp Act imposes an affirmative duty on the states to provide food stamp benefits to individuals who are at or below a prescribed income level. Section 2017(d) negates this duty for those individuals who are being penalized for intentional misconduct. The court rejects the defendant's argument that all client error is intentional.

■ The evidence shows the defendant is penalizing food stamp recipients who are innocent of wrongdoing. It also seems apparent, at least at this stage of the proceedings, that FNS has abandoned its affirmative duty to direct the states to comply with the Food Stamp Act. The federal defendants refusal to set forth a definition of intentional failure to comply as it is used in Section 2017(d) remains to be explained. Must this court do what FNS refrains from doing? The court rules that the defendant's policy is contrary to the directives of the Food Stamp Act.

## IV. The Constitution Claims

The plaintiffs further contend that the defendant's policy is in violation of the due process clause of the Fourteenth Amendment. The plaintiffs argue that in order to comply with federal law, the defendant's policy must include a determination of the recipient's intentions at the time the misrepresentations were made. Such a determination requires at a minimum, notice and an opportunity for a hearing. Both the Food Stamp Act provisions on fair hearings and the case law setting forth the minimum requirements of due process support a conclusion that the current Public Aid non-compliance policy violates statutory and constitutional law.

■ The plaintiffs are entitled to the protections of the notice and hearing provisions set forth in the regulations implementing the Food Stamp Act. Prior to any action to reduce or to terminate a household's benefits, that household must be provided timely and adequate notice of the adverse action to be taken. 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.13. A fair hearing must be available to any household aggrieved by any action of the state agency which affects participation of the household in the program. 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.15. The court finds that this is an adverse action as defined by the regulations because overall food stamp benefits are reduced for those individuals who are undergoing a recoupment or penalty for overpayment of AFDC or SSI benefits. *C.F. Schmiege v. Secretary of Agriculture*, 693 F.2d 55, 56 (8th Cir.1982).

It should be noted that the Department of Agriculture, in the preamble to the final regulations implementing 7 U.S.C. § 2017(d), also recognizes that the non-compliance policy imposes an adverse action on recipients of food stamps. The agency explicitly stated notice must be sent to individuals already undergoing recoupment at the time the new regulations are implemented and who subsequently may have their food stamp benefits reduced because the recoupment amount will now be considered income. 49 Fed.Reg. 48680 (1984). The failure to increase food stamp benefits

in response to a reduction in total income to the household is no different than the action to reduce benefits after they had been increased in response to the recoupment period. In both cases, the recipients have experienced a reduction in the meager amount of cash assistance they have been receiving. Both cases require an increase in food stamp benefits unless there is a finding of intentional program violation. Consequently, the federal statute and regulations require that any resulting reduction in benefits from such a finding must be accompanied by an adequate, advanced notice of adverse action and notice of the aggrieved household's right to a hearing on that finding.

 Furthermore, due process requires as well that notice and a meaningful opportunity to be heard be made available to food stamp recipients subject to the noncompliance policy. Food stamp benefits are a matter of statutory entitlement for persons qualified to receive them. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Such entitlements are property interests which enjoy protection under the due process clause of the Fourteenth Amendment. *Atkins v. Parker*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985). The standard for what due process requires must guide the court in fashioning an appropriate remedy for this due process violation.

IT IS ORDERED that the plaintiffs' motion for summary judgment is allowed. The defendant's cross-motion for summary judgment is denied.

IT IS FURTHER ORDERED that the Clerk set the cause for hearing to resolve the remaining issues in the case including but not limited to:

(1) Disposition of the pending motions to dismiss of the third-party defendants.

(2) The fashioning of a remedy for the plaintiffs and resolution of the Eleventh Amendment problems attendant upon the fashioning of any remedy in this case.